[No. 11613.   Department Two.   June 26, 1914.]

ANGUS McIVER, *Appellant*, v. ROBERT O. HILSTAD *et al.*, *Respondents*.[1]

ESTOPPEL—IN PAIS—INCONSISTENT CLAIMS—ERROR IN DEED.   A grantor is estopped to claim error in the description by metes and bounds in his deed, in that it contained a larger tract on the north side than he intended to convey, which he had marked on the ground at the north by monuments, where, years after, to settle a dispute with a predecessor in interest of the grantee as to the location of the south boundary, he ignored his monuments, and measured the ground from the calls in the deed, which he adopted, and thereby gained his contention as to the south boundary, which he would have lost if he had followed his monuments and present claim of error.

VENDOR AND PURCHASER—BONA FIDE PURCHASER—NOTICE.   Subsequent purchasers of portions of a tract conveyed to their common grantor are not bound to take notice of his improvements and inclosures as indicating an error in the description in the deeds, where his fences only partially inclosed the land; but they are *bona fide* purchasers where they bought with reference to the description contained in the deeds as they appeared on the public records, under Rem. & Bal. Code § 8771, providing that *bona fide* purchasers take the full legal record title from grantors holding the same.

Appeal from a judgment of the superior court for Kitsap county, French, J., entered June 4, 1913, upon findings in favor of the defendants, in an action to quiet title, tried to the court.   Affirmed.

[1]Reported in 141 Pac. 306.

*Fredk. R. Burch* and *Oliver Hulbach,* for appellant.

*W. A. McLeod,* for respondents Hilstad.

*John P. Fay,* for respondents Brown *et al.*

Fullerton, J.—On December 30, 1882, the appellant Angus McIver acquired title to Lot 5, of Section 13, in Township 25, North of Range 1, East of the Willamette Meridian. The tract was practically square in shape (save that the southern boundary followed the shore of Brown's bay), the side and end lines being some 1,320 feet in length. On the east side, also, a lagoon, or arm of the bay extends for a short distance into the tract, but in the record of the government survey of the tract this seems not to have been noted. On October 8, 1900, McIver conveyed, by warranty deed, to one M. J. Berg, a portion of the lot described as beginning 360 feet south of the Northeast corner thereof, and running thence West 370 feet; thence South one degree East 86½ feet; thence South eighteen degrees East 295 feet; thence South fifty-two degrees East 132 feet; thence North fifty-three degrees East 161½ feet; thence due North 340 feet to the place of beginning. Berg had theretofore leased from McIver a tract of land, and had placed thereon certain improvements, which included a store building, and the description was seemingly intended to bound the lands containing the improvements. On December 6, 1900, Berg conveyed the property by the same description to one W. H. Belknap, who on December 29, 1902, conveyed it to one G. O. Hilstad.

On May 12, 1903, G. O. Hilstad conveyed to C. E. Malmberg a portion of the property conveyed to him by the deed from Belknap, described as follows: beginning at a point 360 feet South and 370 feet West of the Northeast corner of lot five (in the section, township and range above given), and running thence South one degree East 86½ feet; thence South eighteen degrees East 88½ feet; thence East to beach at high tide water, being about 120 feet; thence North along

the beach at high tide water to a point due East of place of beginning; thence West to place of beginning. Subsequently this latter tract, by the same description, was conveyed by Malmberg to Millie E. Weber, and by Millie E. Weber to Robert A. Brown, one of the respondents in this action; the last conveyance being made on February 17, 1909.

After G. O. Hilstad acquired the property formerly conveyed to Berg, it was found that the description did not include the land on which the store building stood which Berg had erected, and McIver insisted that Hilstad purchase additional ground or abandon the building. After some negotiation Hilstad agreed to purchase such ground and a deed was executed to him by McIver describing a tract of land beginning 360 feet South of the Northeast corner of lot five and running thence West 370 feet; thence South on a line parallel to the East line of said lot five to the South boundary thereof; thence following the boundary lines to the East and North to the place of beginning. This description was afterwards discovered to contain a larger tract of land than McIver agreed to convey or Hilstad agreed to purchase. Indeed, it seems to have included a part of McIver's orchard, if not some of his buildings. To correct the mistake, the parties mutually agreed upon a line which they marked in part by monuments set in the ground. Hilstad thereupon redeeded to McIver the land conveyed to him by the incorrect description, and received another deed from McIver conveying a tract according to the monuments set on the ground. This description as read into the record, is as follows: "Beginning at a point 360 feet South of the Northeast corner of lot five, section thirteen, township twenty-five north, range one East, W. M., thence West three hundred and seventy feet; thence South one degree East 86½ feet; thence Southeasterly 300 feet, more or less, on an angle of about eighteen degrees East, to a stone monument, to wit, a stone set into the ground and marked with a cross (X); thence Southerly thirty-two feet nine inches to a stone

monument, to wit, a stone set into the ground marked H; thence Southeasterly ninety-seven and one-half feet to a stone monument, to wit, a stone set in the ground marked M, which said last mentioned stone is located on the immediate bank of Brown's Bay about ten feet from mean high tide; thence due east to an intersection with the east line of said lot five; thence north along said line to the place of beginning, according to the government plat of said premises;" saving and excepting therefrom such land as McIver had conveyed from lot five to other parties, the descriptions of which are set out by metes and bounds.

On June 11, 1910, G. O. Hilstad conveyed the property by the last mentioned description to Theo. B. Hilstad and Robert O. Hilstad, respondents in this action. Hans Christensen and Elsa M. Christensen have an interest in the property by virtue of a contract of purchase, executed to them by Robert A. Brown and wife.

Subsequent to the execution of the deed from G. O. Hilstad to Theo. B. and Robert O. Hilstad, McIver conceived that his last mentioned deed to G. O. Hilstad conveyed a larger tract of land than he intended to convey. His present contention is that the common starting point of all of the deeds is some seventy feet further south than the descriptions give it, and the north line of tract, instead of being 370 feet, is but 297 feet in length. In other words, the land conveyed should be described as commencing 437 feet south of the northeast corner of lot five, and run thence west 297 feet, and from thence follow the courses as given in the deeds. This would leave a strip of land some seventy feet in width lying on the north side of the tract conveyed and a like strip on the west some 73 feet in width at its north end and tapering to a common point at the first of the monuments before described.

This action was begun by McIver to quiet title in himself to the land so claimed to have been erroneously conveyed. Issue was taken on the complaint and a trial had, which re-

sulted in a judgment to the effect that he take nothing by his action.

The testimony on the part of the appellant tended to show that, prior to the execution of the deed from the appellant to Berg, the appellant and Berg went upon the ground and set a stake at the northwest corner of the tract intended to be conveyed, and from such stake marked out the boundary lines of the tract; that, in determining the position of this stake, they measured from the north line of lot five, and conceived the stake to be 360 feet south and 370 feet west of the northeast corner of such lot, whereas it was actually some 437 feet south and 297 feet west thereof. It is sought to hold the subsequent purchasers to the lesser tract by showing that Berg entered into possession of the lesser tract and made his improvements and inclosures with reference thereto, and that these improvements and inclosures were in existence at the time of the subsequent conveyances, and was thus notice to the subsequent purchasers of the lands held and claimed by Berg; that they actually purchased with reference thereto, making claim to the larger area only when they discovered that the description contained in the deeds included such area.

The record, however, as we read it, does not justify these contentions. In the first place, McIver himself, has not maintained a consistent position with reference to the commencement corner. In his dispute with G. O. Hilstad, which resulted in Hilstad's purchase of the ground on which the store building stood, he began his measurements, according to his own testimony, at a point 360 feet south of the north boundary line, or 70 feet north of the stake which he now claims as the corner set by himself and Berg. Measuring from this point, the store buildings were found to be without the boundaries of the tract conveyed to Berg; whereas Berg testified that measurements begun at the stake would have shown that the store building was within the boundaries of his purchase. Again, the several conveyances of other parts of lot

five made by McIver were made with reference to the description contained in the deed to Berg, and not with reference to the stake. For example, he conveyed to one Ogle a tract 360 feet wide extending across the north side of lot five, and to one Carlson, or his predecessor in interest, a tract of five acres lying south of the tract conveyed to Ogle and west of the tract conveyed to Berg. These tracts, if the descriptions in the several deeds be taken as correct, close naturally upon the several boundaries of lot five, and upon each other; while, if the appellants' present contentions be correct, they do not so close, but leave in the grantor narrow and irregular tracts between the boundaries, the retention of which could seemingly hardly have been intentional as they could serve no useful purpose.

It seems to us, also, that the final deed of correction between McIver and G. O. Hilstad, ought to be held determinative of the rights of the parties to the land included within its boundaries. To obtain the description for this deed, the parties went upon the ground, made measurements and set monuments, and drew the deed with reference to the description so obtained. In making these measurements, as we have shown, McIver expressly ignored the stake set by himself and Berg and made them with reference to the description contained in the deed. If men may be estopped by their acts, we think this act on the part of McIver ought to estop him from now claiming that the stake marked the true corner or the boundary line of the land actually described in the deed.

Nor do we think the record justified the contention that the subsequent purchasers from Berg bought with reference to Berg's improvements. These improvements are but vaguely described in the record. They consisted in part of fences and in part of buildings. At best, the fences but partially enclosed the land conceded to have been included in the description contained in the deed; a part of the land being without the enclosure entirely, whether its boundaries be as described in the deed, or as McIver's subsequent contentions narrow

such boundaries. On the other hand, all of the subsequent purchasers testify that they purchased with reference to the description contained in the deeds as they appeared on the public records, either without knowledge of the enclosures, or with knowledge that the lands described in the deeds contained lands the boundaries of which were not included within them. They are therefore entitled to protection under the provisions of the statute relating to *bona fide* purchasers of real property without notice. Rem. & Bal. Code, § 8771 (P. C. 95 § 35). This section provides:

"Whenever any person, married or single, having in his or her name the legal title of record to any real estate, shall sell or dispose of the same to an actual *bona fide* purchaser, a deed of such real estate from the person holding such legal record title to such actual *bona fide* purchaser shall be sufficient to convey to and vest in such purchaser the full legal and equitable title to such real estate free and clear of any and all claims of any and all persons whatsoever not appearing of record in the auditor's office of the county in which such real estate is situated."

The other errors assigned relate to matters not prejudicial, even though they may be technically erroneous, and it is not necessary to notice them more specifically.

The judgment of the trial court is in accord with the facts shown by the record and the law applicable thereto, and should be affirmed. It is so ordered.

CROW, C. J., MOUNT, PARKER, and MORRIS, JJ., concur.