THOMAS S. RIDGEWAY, Appellant, *vs.* SAMUEL N. HOLLIDAY, *et al.*, Respondents.

1. *Land, vendee of—Possession when adverse to vendor.*—The possession of a vendee of land need not be under a deed, in order that it may be adverse to his vendor.

2. *Land—Purchaser of—Entry without deed, when transaction a sale.*—Where one buys land, pays the purchase money therefor, and enters into possession thereof, with an agreement that a deed shall be made, there being no contingency upon the occurrence of which he is to surrender the possession to his vendor, the transaction is not an agreement to purchase, it is a sale. The contract is executed on the part of the vendee, and he does not hold under his vendor, but adversely to him.

3. *Limitations—Ten years' adverse possession—Effect of on title.*—Adverse possession for ten years will not only bar a recovery by the true owner, but it will extinguish his title and confer it upon the adverse occupant.

4. *Land—Possession—Quit-claim deed—Adverse possession—Bona fide purchase without notice, etc.*—One in possession of land, claiming title under a quit-claim deed from the owner of the record title, cannot defend his possession against the true owner of such land, holding title by virtue of an adverse possession for the statutory period, on the ground that he is a *bona fide* purchaser for a valuable consideration without notice of the title of such true owner. The grantee in such deed takes only such title as his grantor could lawfully convey, that is the title he had at the time of making his conveyance.

5. *Ejectment—Writ of possession—Notice, what will put on inquiry.*—A purchaser from the plaintiff in an ejectment suit in possession of the land sued for, under a writ of possession, with knowledge of such facts, has a sufficient notice of a claim adverse to his vendor to put him upon inquiry as to the nature and extent of that claim.

6. *Land and land titles—Assessments—Admission—Purchase of tax title.*—The assessment of land to another person than the one in possession, if not shown to be attributable to the possessor, or to have been made with his knowledge or consent, cannot be construed into an admission on his part of the title of the other party. Nor is his purchase of a tax title based upon such assessment, such an admission. He has a right to discharge the incumbrance in any way he sees fit.

*Appeal from St. Louis Circuit Court.*

*Isaac T. Wise*, for Appellant.

I. From the time Bennett paid the purchase money, and as owner went into possession, which was open and notorious, until the time when Ridgeway's tenant was sued in ejectment by Voteau from October or November, 1859, to March 15th, 1870, was a period of more than ten years. There was nothing in the future for the vendee, on his part, to perform,

to entitle him to a deed. The statute of limitations began to run from said date of possession in favor of the vendee, and after running for said period of ten years, and more, gives said vendee, or to plaintiff holding under him, a valid affirmative title. The possession is adverse to the vendor. If the relation of donor and donee had existed instead that of vendor and vendee, the statute would have run in favor of plaintiff. Vendee's possession is adverse against vendor and statute runs. (Rannells vs. Rannells, 52 Mo., 109 ; Maclot vs. Dubreuil, 9 Mo., 480 ; Landes vs. Perkins, 12 Mo., 258 ; Blair vs. Smith, 16 Mo., 273 ; Biddle vs. Mellon, 13 Mo., 335 ; Kincaid vs. Dormey, 47 Mo., 341.)

II. The vendee has an affirmative title and could have defended against a suit in ejectment by vendor. (Barry vs. Otto, 56 Mo., 179 ; Gibbs vs. Sullens, 48 Mo., 239.)

III. An adverse possession of ten years and over prevails over the superior title, and therefore one in whom the legal title was vested loses such title, nor can he by deed transmit any better title than his own. The statute runs against all persons not excepted by the terms of the statute itself. (Biddle vs. Mellon, Blair vs. Smith, Maclot vs. Dubreuil, *supra*.) And the defendant in this cause is not within the exception of the Statute, it is not so contended.

*S. N. Holliday*, for Respondents.

I. One who enters into possession under an agreement to purchase, looking to his vendor for a deed, cannot set up the statute of limitations as a bar to an ejectment by the owner. (Draper vs. Shoot, 25 Mo., 197–204.)

" A possession to be of any avail under the statute of limitations, must be adverse to the rightful owner ; to be adverse it must be under a claim of title hostile to the right of the true owner." (Pease vs. Lawson, 33 Mo., 35.)

" A possession even for a hundred years, if not adverse, would not bar him who has the legal title." (Johnson vs. Prewitt, 32 Mo., 553.)

" So the statute of limitations does not run against the Government or its grantee in favor of one who does not hold

the entire title (why). Until the title emanates the possession is not adverse but under the government. It is analogous to the case of one entering under a contract to purchase." (Leandes vs. Perkins, 12 Mo., 258.) Where one enters in privity with the owner, the statute of limitations does not begin to run until there is a clear, positive and open disavowal of the owner's title brought home to his knowledge. (Zeller vs. Eckert, 4 How. [U. S.] 289 ; Babcock vs. Wyman, 19 How., 289.)

Possession to be adverse must be accompanied by a claim of the entire title. (Jackson vs. Johnson, 5 Cow., 92.)

II. The possession of Bennett, who held without color of title, cannot be tacked on to the possession of Ridgeway, the plaintiff, who also held without color of title, as against defendant Holliday, an innocent purchaser from the owner of the record title, in peaceable and lawful possession of the premises. (Menkins vs. Blumenthal, 27 Mo., 198.) All deeds or other conveyances of lands, or of any estate or interest therein, shall be subscribed and sealed, etc. (Wagn. Stat., 1870, 272, § 7.) No such instrument in writing shall be valid, except between the parties thereto, and such as have actual notice thereof, unless the same shall be deposited with the recorder for record. (Wagn. Stat., 27, § 26.) "Possession" is an interest in land ; is evidence of a fee ; and if it endures a sufficient length of time without interruption, will be a perfect title. (Shaw vs. Nicolay, 30 Mo., 99.)

If Bennett had conveyed by deed to Ridgeway, and the deed had been improperly acknowledged and recorded, the deed could not have been introduced in evidence against an innocent purchaser under our registry laws. A verbal sale— the verbal sale by Bennett—should not and does not stand on a more favorable footing than if it had been by deed ; and as it was not recorded it is not competent as against an innocent party who purchases without actual notice.

The statute has required all conveyances of any interest in land to be in writing, duly executed, acknowledged and recorded (or actual notices) in order to bind third parties, and this court in Digman vs. McCollum, (47 Mo., 372) held, that one holding by adverse possession, without record title,

Ridgeway v. Holliday, et al.

was subject to, and bound by, the registry laws as to any conveyances made by him. This brings Bennett within the exact language of the court.

III. An innocent purchaser of the record title from the owner in peaceable possession of the premises, should and will prevail over a title acquired by the statute of limitations.

This should be so from the maxim : "If one of two innocent parties must suffer, it must be he who occasioned the loss." If one has a title acquired by possession, that title is good at all times against a trespasser, and is also good, perhaps, against the record owner. (Strickland vs. McCormick, 14 Mo., 166.) It would be good against all the world but an innocent purchaser. But does not one who holds title by the statute of limitations, occupy the same position as one who holds it in possession holding under an unrecorded deed? How can he occupy a better position? Does not the law rather favor written muniments of title, even though they be unrecorded? The party who holds by unrecorded deed must keep possession in order to give notice of his title to the world. (Bowman vs. Lee, 48 Mo., 335.) He may make his title one of record by bringing suit to quiet title, so soon as it is perfect by statute of limitations. The law requires a party to be in continuous adverse possession for ten years, to make his title by possession perfect; and it is not unreasonable to require this possession to continue to notify the world of the title, that innocent purchasers from the record owner may be protected; there can then be no such innocent purchaser to suffer. This continuous possession is especially necessary against the owner of the documentary title. Other parties would be mere trespassers, and would have no power by virtue of their possession, to impose upon the world. They could be ejected by the legal title acquired by limitations; so, too, could the record owner. But an entirely different question is presented where the owner of the documentary title gets lawfully into possession of the premises, and while in the peaceable possession of the same, sells the same for a valuable consideration to an innocent purchaser.

The defendant, on his examination of the title, found the same perfect in Voteau, (for twenty-two consecutive years)

and found Voteau in possession. What more diligence could he have used? Should he have inquired whether Voteau had been in peaceable, notorious and adverse possession, also for the last preceding ten years? Is such the law? To insure protection is it necessary for a purchaser of real estate, not only to search the records to find the true owner of record, but also to find out, at his peril, whether that record owner has been in continuous possession, open, notorious, adverse possession, for the last preceding ten years?

This court has gone so far, and very properly, too, as to hold that even where the parties take the precaution to have their conveyance duly put in writing, executed and acknowledged and recorded; yet if the recorder has neglected his duty, and imperfectly recorded the conveyance, an innocent purchaser or incumbrancer shall be protected at the expense of, or in preference to, the owner of the imperfectly recorded deed. (Terrell vs. Andrew Co., 44 Mo., 309–312.)

The statute says, "that when the deed is certified and recorded it shall impart notice of the contents from the time of filing. Certainly; but this is understood in the sense that the deed is rightly recorded. It never was intended to impose upon the purchaser the burden of entering into a long and laborious search to find out whether the recorder had faithfully performed his duty. This obligation of giving the notice rests on the party holding the title. If he fails in his duty he must suffer the consequences. If his duty is imperfectly performed he cannot claim all the advantages, and lay the fault at the door of an innocent purchaser." That is the whole doctrine. It applies to all titles, as well those acquired by the statute of limitations as any other.

This court, in Youngblood vs. Vastine, (46 Mo., 239) held, that an innocent purchaser from the heirs prevailed over the holder of an unrecorded deed from the ancestor. Judge Bliss, in giving the opinion, said: "Thus purchasers are required to spread upon record the evidence of their ownership; and if others suffer from their neglect the law will not recognize such ownership. Or in using the language of the law of tenures, we might perhaps say, that, in a conveyance the absolute title rests with the grantor and his heirs in abeyance,

to vest irrevocably only upon the record of the deed, and that it will vest in the first grantee in condition to receive the grant who shall so place it upon record."

Since, therefore, the strictest construction of the law is given in requiring written evidences of title to be fully and properly placed upon record, in order to impart notice, will not the same be given in requiring possession, the only evidence of title, when the title is acquired by the statute of limitations, "to be spread upon the record, so to speak, to be kept before the people"—to be continuous that the notice may be continuous.

HOUGH, Judge, delivered the opinion of the court.

This was an action of ejectment. It appears that in October or November, 1859, one Halford, step-son of Benjamin F. Voteau who then lived in the State of California, acting under a power of attorney from said Voteau which was defectively acknowledged, sold to a man named Bennett, the premises in controversy, received the consideration and put Bennett in possession. No deed was made in consequence of the defect in the acknowledgment of the power of attorney; but Halford promised to send and get a deed from Voteau or a formal power of attorney and execute a deed himself, which was never done. Bennett lived on the premises about one year and then sold the same and delivered the possession to the plaintiff, but made no conveyance to him. The plaintiff was present at the sale and delivery of possession to Bennett by Halford. Plaintiff remained in possession by himself and his tenants until the 23rd day of July, 1870. On the 9th day of March, 1870, Voteau brought an action of ejectment in the Circuit Court of the United States for the Eastern District of Missouri against the tenant of the plaintiff Ridgeway, of which action Ridgeway who then lived in the State of Illinois had no notice, and in which he was not named as a party, and the tenant having made default, judgment was on the 20th day of April, 1870, rendered in favor of Voteau for the recovery of the possession of said premises, and on the 23rd day of July, 1870, possession of the same was delivered to him by the United States Marshal in

pursuance of said judgment, and he remained in possession until the 19th day of September, 1870, when he executed and delivered a quit-claim deed for the same to the defendant, Holliday, who was in possession by his tenant, Gentry, at the time of the institution of this suit by Ridgeway in November, 1871, and at the time of the ouster laid in the petition. It was admitted by the parties for the purposes of the trial, that the legal title was in Voteau on the 4th day of October, 1848. The defendant, Holliday, testified that he knew of the suit in the United States Court by Voteau, for the recovery of the possession of this property and of the result thereof; that he examined Voteau's title before purchasing and found it to be perfect, so far as the records were concerned. He did not know Ridgeway, and had not heard that he had ever been in possession of the premises, or that he made any claim to the same. Defendant introduced in evidence a deed dated January 16, 1867, from the collector of St. Louis County to the wife of plaintiff relating to the premises in controversy, from which it appeared that a judgment was rendered in July, 1864, in the County Court of St. Louis County, against this property for the taxes of 1862, the same having been assessed to B. F. Voteau for that year, and that in October, 1864, it was sold for said taxes to Charles M. Elleard, who received a certificate of purchase which he transferred to Mrs. Ridgeway and the collector's deed was accordingly made to her, but it conveyed only the right, title, interest and estate of the State of Missouri in said premises.

The cause was tried by the court without the aid of a jury and the following declaration of law was given at the instance of the plaintiff:

"If the court sitting as a jury believe from the evidence, that possession of the premises in question was given under a promise of a conveyance to one Bennett, and that he went into possession claiming title, and that afterwards he sold out to plaintiff, and that thereupon plaintiff went into possession, and if the court sitting as a jury shall believe that said possession of Bennett joined with the further possession of plaintiff continued for a period of over ten years, and that said possession was notorious, visible and actual for said period, it

declares the law to be that said possession is adverse, and finds for the plaintiff," which was excepted to by the defendant.

The court refused the following declarations of law asked by the defendant:

1st. If the court, sitting as a jury, believes from the evidence that the records of the county of St. Louis, on the 19th day of September, 1870, showed that the legal title to the premises in controversy was in Benjamin F. Voteau, and had been in the said Voteau as shown by said records, from October 4th, 1848, and that said Voteau was in the peaceable and quiet possession of said premises from the 23rd day of July, 1870, up to the 19th day of September, 1870, and that while so remaining in possession, the said Voteau, by his deed dated September 19, 1870, conveyed said premises for a valuable consideration to defendant, Samuel N. Holliday, without notice on the part of said Holliday of the plaintiff's claim of title, or of the plaintiff having been in possession of said premises and that said Voteau delivered possession of said premises to said Holliday under and in pursuance of said conveyance, on the 19th of September, 1870, and that said Holliday remained in the peaceable possession of said premises from that time until the institution of this suit in November, 1871, then the verdict must be for defendants.

2. The court declares the law to be that one who enters under an agreement to purchase cannot set up the statute of limitations as a bar to an ejectment by the owner, and if the court sitting as a jury, believe from the evidence that Bennett entered into the possession of the premises sued for under an agreement to purchase from Voteau, and that he looked to Voteau for a deed and expected a deed from him, then neither Bennett nor any one claiming under him can set up the possession of Bennett as adverse to Voteau until Bennett asserted a title hostile to Voteau, or did some act showing an intention on his part to claim the property adversely to Voteau.

3. If the court, sitting as a jury, believe from the evidence, that Bennett made an agreement to purchase, with Voteau for the premises in controversy, and that by said agreement Voteau was to make a deed conveying to Bennett the legal

title to said premises, and that Bennett entered into possession of said premises under said agreement of purchase, looking for and expecting a deed from Voteau conveying the legal title of said premises to him, then neither Bennett nor any one claiming under him can set up the possession of Bennett as adverse to Voteau while the said Bennett was looking for and expecting said conveyance from said Voteau.

4. There is no evidence in the cause showing an intention on part of Bennett to hold adversely to Voteau before the date of his sale of the premises to the plaintiff in October or November, 1860.

5. If the court, sitting as a jury, believe from the evidence, that the plaintiff, about the year ——, purchased a tax certificate of the premises in controversy in the name of his wife, and on the —— day of January, 1864, received a tax deed to said premises in the name of his wife under a sale thereof for the taxes of 1862, that is evidence tending to show an admission on the part of the plaintiff that said premises were not held adversely to Voteau at the time said taxes were assessed.

There was a finding and judgment for the plaintiff which was reversed at General Term and plaintiff has appealed to this court.

Pretermitting for the present any reference to the instruction in regard to the tax deed, the positions assumed in defendant's other instructions are: first, that as Bennett entered into possession under an agreement to purchase, and looked to Voteau for a deed, he did not, in consequence of that relation, hold adversely to Voteau, and Ridgeway cannot, as against the defendant, tack Bennett's possession to his own, so as to confer upon himself any rights under the statute of limitations; and second, that being a purchaser of the record title from the owner in peaceable possession of the premises, without any notice of any adverse claim, he cannot be evicted by one who had, previous to such possession and purchase, acquired title by adverse possession. The defendant is in error in supposing the transaction between Bennett and Halford to have been an agreement to purchase. It was a sale. Possession was delivered to Bennett and the consideration

was paid to Halford. Bennett was in a position to demand a conveyance from Voteau, as nothing remained to be done by him. The contract of purchase was executed, as far as he was concerned, and Voteau, though holding the legal title, could not have evicted him. (Tibeau vs. Tibeau, 19 Mo., 78.) Bennett, therefore, though expecting and having a right to expect a deed from Voteau, held against him and adversely to him. There was no contingency on the occurrence of which he was to surrender the possession to Voteau, and he could not be said to hold under him. This is not the case of a vendee holding under a bond for title or other executory contract of purchase, where some act remains to be performed by the vendee before he can demand the legal title. Bennett's possession then having been according to the testimony, actual, visible and adverse, the continuity of the united adverse possession of himself and the plaintiff was not broken by the transfer of the premises to plaintiff without deed or other writing. The possession of an adverse occupant need not be transferred by deed. (Menkens vs. Blumenthal, 27 Mo., 203; Crispin vs. Hannavan, 50 Mo., 549.) The adverse possession, of which the plaintiff had a right to avail himself, it will be seen from the testimony, was more than ten years. This possession would not only bar a recovery by Voteau, but it extinguished his title and conferred it upon the plaintiff. (Crockett vs. Morrison, 11 Mo., 7; Biddle vs. Mellon 13 Mo., 335; Blair vs. McGinniss, 16 Mo., 273; Nelson vs. Brodhack, 44 Mo., 596; Barry vs. Otto, 56 Mo., 177.) There can be no question then, that if Ridgeway had brought his suit against Voteau, after his entry on July 23, 1870, and before he sold and transferred the possession to the defendant, Holliday, he could have recovered.

The case of Roberts vs. Sanders, (3 A. K. Marshall, p. 951.) is in so many respects similar to the case at bar, at the present stage of our inquiry, that it will not be inapt to recite its leading facts. It appears in that case that a patent had been issued by the State of Virginia to one Griffin, and also to John Donnell and Charles Morgan in 1787, for land upon which one Sanders subsequently entered, under color of right, and held continuous adverse

possession thereof, for more than twenty years; and thereafter, and whilst possession was still held by a tenant of Sanders, an ejectment was commenced in the Circuit Court of the United States for the district of Kentucky in favor of one Colston, and notice was served upon the tenant in possession, but without any defense being made, and without any notice to Sanders, the landlord, or his having any knowl edge of the ejectment having been brought, judgment was rendered against the casual ejector by default. Sanders' tenant was turned out of possession, and the possession was delivered to Colston. From that time until the institution of the suit by Sanders, the possession continued in Colston and those claiming under him. Sanders sued Roberts and Ralston, tenants in possession, and on motion Colston and Morgan were admitted to defend. What Colston's right was, does not appear, and it does not appear that there was any privity between Morgan and those in possession. The court say "without a patent, Sanders may, by his entry, have ousted the patentees, Donnell and Morgan, to whom the Commonwealth had previously granted the land, and by continuing the possession so gained by his entry, claiming title to the boundaries of his survey, the patentees, Donnell and Morgan, could not, after the expiration of twenty years, have legally entered on the land; and any possession which destroys the rights of others, of necessity confers that right upon the possessor. If, therefore, we are correct in supposing Sanders, by his possession, gained a right of entry in the land, it follows that he cannot be prevented from recovering by reason of anything contained either in the patent to Donnell and Morgan, or that to Griffin, or by the recovery of Colston in the Circuit Court of the United States." It will be seen from this case and from the case of Biddle vs. Mellon, (13 Mo., 335,) the facts in which latter case are also very much like those in the case at bar, that the plaintiff could have maintained his action against Voteau. But it is contended by the defendant that he is a purchaser for value from Voteau who appeared from the record to be the owner, and was in possession, without any notice of the prior adverse possession

which passed the title to Ridgeway, or of any claim on his part to the premises; and that as against him, the defendant, Ridgeway, cannot assert his title; that to permit him to do so, would be giving to an adverse possession greater force and efficacy than is given to an unrecorded conveyance. These objections, it must be admitted, are very forcible. The registry act, however, cannot, in the nature of things, apply to a transfer of the legal title by adverse possession, and such title does not stand on the footing of one acquired and held by an unrecorded deed, and of such title, the purchaser may not expect to find any evidence in the records. Whether it is incumbent on the owner, by adverse possession, to perpetuate the evidence of his title by proceeding to remove the cloud thereon, occasioned by the existence of the record title in another, so as to affect subsequent purchasers with notice, it is not necessary to inquire. We are relieved of any discussion of this subject, by the character of the conveyance under which defendant claims. It is a quit-claim deed and will not support his claim of being a purchaser for a valuable consideration without notice. He took under it only what Voteau could lawfully convey, (Oliver vs. Piatt, 3 How. U. S., 333; 3 Wheat., 449; Bogy vs. Shoab, 13 Mo., 380;) and his title having passed to the plaintiff as completely as if he had transferred it by deed, the defendant took nothing by his quit-claim deed from Voteau, and can have no better right to the possession than Voteau had. Besides knowledge that Voteau had recovered possession of the premises in ejectment was sufficient notice of an adverse claim and possession to put the defendant upon inquiry as to the nature of that claim and possession. The first, second, third and fourth instructions asked by defendant were rightly refused. In regard to the fifth instruction asked by defendant, we have only to say that the assessment of the lot in the name of the record owner is not shown to have been in any way attributable to the plaintiff or to have been made with his knowledge or consent, and after Elleard had bought the property for taxes, he had an undoubted right to protect his possession by discharging that incumbrance in any way he saw fit. His possession was not in any way affected by this collector's deed; besides, it only purported to

convey the right, title and interest of the State of Missouri. (Einstein vs. Gay, 45 Mo., 62.) The instruction given at the instance of the plaintiff, though subject perhaps, to some verbal criticism, construed in the light of the facts, is substantially correct, and as the trial was by the court, it is not necessary to comment upon it.

All the judges are of opinion that the judgment of the General Term should be reversed, and the judgment of Special Term should be affirmed and judgment will be entered accordingly.