[No. 14487.  Department One.  April 30, 1918.]

## C. F. McInnis et al., Appellants, v. Day Lumber Company, Respondent.[1]

WATERS AND WATER COURSES—APPROPRIATION AND PRESCRIPTION—LOSS OF RIGHT—EVIDENCE—PAROL ADMISSIONS. Where the prescriptive right to maintain a dam at a certain height and overflow lands has become fully vested by adverse use for the statutory period of ten years it cannot be lost by a subsequent parol admission that the possession was not adverse or recognizing a right to have the dam lowered.

Appeal from a judgment of the superior court for Skagit county, Brawley, J., entered May 14, 1917, upon findings in favor of the defendant, in an action for an injunction and for damages, tried to the court. Affirmed.

*James C. Waugh* and *J. W. Russell*, for appellants.

*Thomas Smith* and *Coleman & Gable*, for respondent.

PARKER, J.—The plaintiffs, McInnis and wife, seek a judgment to compel the defendant, Day Lumber Company, a corporation, to remove a dam maintained by it in Nookachamps creek, at its sawmill in Skagit county, which dam the plaintiffs claim causes the overflow of their land, and also seek damages for past injuries to their land so caused. Trial in the superior court for that county resulted in findings and judgment enjoining the defendant from maintaining the dam above a certain height, and awarding the plaintiffs damages for past injuries in the sum of $50. From this disposition of the cause, the plaintiffs have appealed to this court.

Plaintiffs own land bordered upon the upper end of a natural widening of the creek, called Big Lake, some

[1]Reported in 172 Pac. 844.

two and one half miles above respondent's sawmill, which is situated at the lower end of the lake. In the year 1897, Parker Brothers, a copartnership, built the dam in question in the creek just below the lower end of the lake for the purpose of raising the water a few feet to facilitate the handling of shingle bolts and logs brought to their mill there situated to be manufactured into lumber and shingles. Thereafter this mill property, including the dam, was conveyed by Parker Brothers to the J. D. Day Lumber Company, a copartnership, and thereafter it was conveyed by the J. D. Day Lumber Company to respondent, Day Lumber Company, a corporation, the present owner. The dam as originally constructed consisted of a cedar log, about four feet in diameter, laid across the bed of the creek for the foundation of the dam, and other timbers were placed on top of it so as to make the top of the dam considerably higher. Just how high the dam was originally constructed in the year 1897 is a matter of some uncertainty. We think, however, that the evidence fully warrants the conclusion reached by the trial court that, for more than ten years prior to the year 1910, the dam was continuously maintained by respondent and its grantors to at least the height of twenty-nine inches above the top of this foundation cedar log, which log is still in the same position as originally placed, and in a fair state of preservation. The changes of material with which the dam has been maintained have been only in the portions thereof above the log. Repairs made upon the dam since about 1909 have resulted in raising it several inches, possibly a foot, higher than twenty-nine inches above the foundation log. The exact extent of this raise we need not here notice. The trial court rendered judgment enjoining respondent from maintaining the dam at a greater height than twenty-nine inches above the

top of the foundation log, and awarded the appellants the sum of $50 damages for injuries to their land by the overflow thereof caused by the raising of the water more than twenty-nine inches above the top of the foundation log.

The judgment, in so far as it restrains the maintenance of the top of the dam not to exceed twenty-nine inches above the foundation log was, by the trial court, rested upon the theory that respondent had acquired the right in 1910 to maintain the dam at that height by prescription, as against appellants as owners of the land which the maintenance of the dam at that height caused to be overflowed. We agree with the trial court that the evidence calls for the conclusion that, for more than ten years prior to 1910 and up to the present time, respondent and its grantors have continuously, without any interruption whatever, maintained the dam at least to the height of twenty-nine inches above the foundation log. The evidence is quite voluminous and is not wholly free from conflict, but that it preponderates in favor of the court's conclusion, we are quite convinced. We think it would be unprofitable to review the evidence here in detail.

Counsel for appellants also contend that the maintenance of the dam and the overflow of their lands caused thereby was not in law adverse to their rights, but that respondent recognized their right to have the same discontinued. This contention is rested upon negotiations commenced between respondent and appellants in February, 1910, wherein it is claimed respondent conceded the rights of appellants as claimed by them. It is not claimed, indeed it could not be under the evidence, that there was ever anything said or done by any of the parties in interest prior to February, 1910, which would in the least impede the running of the statute in favor of respondent and its grantors in their claimed

prescriptive right to maintain the dam. Besides, we think these negotiations related to the increase of the height of the dam by respondent about the year 1910 and later, rather than to the prior maintenance of the dam. We have noticed the fact of the maintenance of the dam to a height of at least twenty-nine inches above the top of the foundation log for more than ten years prior to 1910 for the purpose of arriving at a conclusion as to what prescriptive rights respondent had then acquired, and having arrived at the conclusion that its prescriptive rights, to the extent recognized by the trial court, were perfected in the year 1910, it would seem to be of no consequence what negotiations, amounting to less than the formal conveyance by respondent of its thus acquired prescriptive right, were had in 1910 and later. It seems to be well settled law that:

"Where title has become perfect by adverse possession for the statutory period it is not lost by an admission by the holder that the possession was not adverse." 2 C. J. 256.

We find a clear statement of the rule announced by Chief Justice Reese, speaking for the supreme court of Nebraska in *Towles v. Hamilton,* 94 Neb. 588, 143 N. W. 935, as follows:

"It is elementary that, where the title has become fully vested by disseizin so long continued as to bar an action, it cannot be divested by parol abandonment or relinquishment or by verbal declarations of the disseizor, nor by any other act short of what would be required in a case where his title was by deed."

Treating the acquired right to overflow appellants' land as a prescriptive right rather than the acquiring of title to the land so overflowed, the law applicable would be the same. *Swan v. Munch,* 65 Minn. 500, 67 N. W. 1022, 60 Am. St. 491, 35 L. R. A. 743; *Alcorn v. Sadler,* 71 Miss. 634, 14 South. 444, 42 Am. St. 484.

These cases are directly in point, since they have to do with the question of rights acquired by the maintenance of dams causing the overflow of lands of others for the statutory period relating to the acquisition of real property and interests thereon by adverse possession or use. A title or easement right in real property is no different when acquired by adverse possession or use than when acquired by formal grant in the manner prescribed by the statute of frauds. It seems to follow, as a matter of course, that such title or right can be parted with only in the manner that a title or easement right otherwise acquired may be parted with.

Counsel for appellants cite and rely upon our decision in *St. Martin v. Skamania Boom Co.*, 79 Wash. 393, 140 Pac. 355. A critical reading of that case, we think, discloses that ten years had not elapsed since the beginning of the damages for which redress was sought, when the negotiations alleged to show use and possession by consent occurred. It seems quite clear to us that the trial court properly disposed of this case in so far as it recognized the perfected right of respondent, acquired by adverse possession and use, to maintain the dam at the height of twenty-nine inches above the top of the foundation log.

Contention is made in behalf of appellants that the damages awarded them are inadequate. We cannot so view the evidence, all of which we have read with care.

The judgment is affirmed.

Ellis, C. J., Fullerton, Main, and Webster, JJ., concur.