[No. 30745.   Department One.   May 10, 1949.]

DORA B. MUGAAS, *Respondent,* v. DELMAR C. SMITH *et al.,*
*Appellants.*[1]

[1]Reported in 206 P. (2d) 332.

*Skeel, McKelvy, Henke, Evenson & Uhlmann, Donald S. Voorhees,* and *Olson & Palmer,* for appellants.

*Velikanje & Velikanje* and *John S. Moore, Jr.,* for respondent.

HILL, J.—This is an action by Dora B. Mugaas, a widow, to quiet title to a strip of land 135 feet in length and with a maximum width of 3½ feet which she claims by adverse possession, and to compel Delmar C. Smith and his wife to remove therefrom any and all buildings and encroachments. From a judgment quieting title to the strip in Mrs. Mugaas and directing the removal of any and all buildings and encroachments, the Smiths appeal.

■ ■ The appellants contend that the respondent has failed to establish adverse possession of the tract in question. The character of the respondent's possession over the statutory period is one of fact, and the trial court's finding in that regard is to be given great weight and will not be overturned unless this court is convinced that the evidence preponderates against that finding. We are of the opinion that the evidence was sufficient to sustain the trial court's findings, and the conclusions based thereon, that the respondent had acquired title to the strip in question by adverse possession. The evidence would have warranted a finding that her adverse possession dated back to 1910.

The only serious questions raised by this appeal are attributable to the fact that the fence which between 1910 and 1928 clearly marked the boundary line for which respondent contends, disappeared by a process of disintegration in the years which followed, and, when appellants purchased the property in 1941 by a legal description and with a record title which included the disputed strip, there was no fence and nothing to mark the dividing line between the property of appellants and respondent, or to indicate to the appellants that the respondent was claiming title to the strip in question.

We have on several occasions approved a statement which appears in *Towles v. Hamilton,* 94 Neb. 588, 143 N. W. 935, that:

"It is elementary that where the title has become fully vested by disseizin so long continued as to bar an action, it cannot be divested by parol abandonment or relinquishment or by verbal declarations of the disseizor, nor by any other act short of what would be required in a case where his title was by deed."

See *McInnis v. Day Lbr. Co.,* 102 Wash. 38, 172 Pac. 844; *King County v. Hagen,* 30 Wn. (2d) 847, 194 P. (2d) 357.

The fact that the respondent had ceased to use the strip in question in such a way that her claim of adverse possession was apparent, did not divest her of the title she had acquired.

Appellants' principal contention is that we have held, in a long line of cases, that a bona fide purchaser of real property may rely upon the record title. The cases cited by appellants construe our recording statute, Rem. Rev. Stat., §§ 10596-1, 10596-2 [P.P.C. §§ 500-1, -3], and involve contests between those relying upon the record title and those relying upon a prior unrecorded conveyance as conveyances are defined by Rem. Rev. Stat., § 10596-1. The holdings in the cases cited give effect to that provision of § 10596-2 which states that any unrecorded conveyance

" . . . is void as against any subsequent purchaser or mortgagee in good faith and for a valuable consideration from the same vendor, his heirs or devisees, of the same real property or any portion thereof whose conveyance is first duly recorded. . . ."

Appellants cite no cases, and we have found none, supporting their contention that, under a recording statute such as Rem. Rev. Stat., §§ 10596-1, 10596-2, a conveyance of the record title to a bona fide purchaser will extinguish a title acquired by adverse possession. The trial judge, in his admirable memorandum decision, quote the following from the opinion in *Ridgeway v. Holliday,* 59 Mo. 444, 454:

" . . . But it is contended by the defendant that he is a purchaser for value from Voteau who appeared from

the record to be the owner, and was in possession, without any notice of the prior adverse possession which passed the title to Ridgeway, or of any claim on his part to the premises; and that as against him, the defendant, Ridgeway, cannot assert his title; that to permit him to do so, would be giving to an adverse possession greater force and efficacy than is given to an unrecorded conveyance. These objections, it must be admitted, are very forcible. The registry act, however, cannot, in the nature of things, apply to a transfer of the legal title by adverse possession, and such title does not stand on the footing of one acquired and held by an unrecorded deed, and of such title, the purchaser may not expect to find any evidence in the records."

He quoted, also, the following from *Schall v. Williams Valley R. Co.*, 35 Pa. 191, 204:

"An unrecorded paper title does not affect a purchaser without actual notice, and the learned judge pronounced a title by the statute of limitations, if unaccompanied by a continued possession, as no more than an unrecorded paper title. If this be sound doctrine, then the claimant under the statute, however he may have perfected his right, must keep his flag flying for ever, and the statute ceases to be a statute of *limitations*.

"The first observation we have to make on this ruling is, that titles matured under the statute of limitations, are not within the recording acts. However expedient it might be to require some public record of such titles to be kept, and however inconvenient it may be to purchasers to ascertain what titles of that sort are outstanding, still we have not as yet any legislation on the subject, and it is not competent for judicial decision to force upon them consequences drawn from the recording acts. Those acts relate exclusively to written titles."

These cases seem to us to be directly in point, and to afford a complete answer to appellants' contention. However, appellants say that these and other cases are not applicable because legislation has been enacted, *i.e.*, Rem. Rev. Stat., § 10577 [P.P.C. § 434-55], to bring possessory titles within the recording act. That section reads as follows:

"Whenever any person, married or single, having in his or her name the legal title of record to any real estate, shall sell or dispose of the same to an actual bona fide purchaser,

a deed of such real estate from the person holding such legal record title to such actual bona fide purchaser shall be sufficient to convey to and vest in such purchaser the full legal and equitable title to such real estate free and clear of any and all claims of any and all persons whatsoever not appearing of record in the auditor's office of the county in which such real estate is situated."

The appellants contend that, under this section of the statute, the full legal and equitable title is vested in them as bona fide purchasers from the record title holder, and that the title acquired by adverse possession is thereby extinguished. We again quote a sentence from the Pennsylvania decision:

"If this be sound doctrine, then the claimant under the statute, however he may have perfected his right, must keep his flag flying for ever, and the statute ceases to be a statute of *limitations*."

If Rem. Rev. Stat., § 10577, has the effect claimed for it by the appellants, the only way in which a person who has acquired title by adverse possession could retain it against the purchaser of the record title is to make his possession and use of the property so continuous, so open, and so notorious as to prevent anyone from becoming a bona fide purchaser.

Immediately following this section in Rem. Rev. Stat., this statement appears in italics: *"This section relates to community property only."* It was § 1, p. 368, of chapter 151 of the Laws of 1891, and the title of the act was "An Act to protect innocent purchasers of community real property." The other three sections of that act appear in Rem. Rev. Stat. as §§ 10578, 10579, and 10580 [P.P.C. §§ 434-57, -59, -61]; and the act in its entirety, in accordance with its title, is for the protection of innocent purchasers against undisclosed community interests. It is too clear for argument that the act never was intended to have, and could not have, constitutionally, in view of its restricted title, any such application as that for which appellants contend.

It is true that there is language in *McIver v. Hilstad,* 80 Wash. 206, 141 Pac. 306, and *Ashton v. Buell,* 149 Wash. 494,

271 Pac. 591, which could be construed as giving the statute a broader effect. The limited application of this enactment was not called to the court's attention in the briefs in those cases, and there was no question of adverse possession involved. The statute's limited application was recognized in *Sengfelder v. Hill*, 21 Wash. 371, 58 Pac. 250, where it was said:

"An examination of the act will show that the legislature intended by it to protect *bona fide* purchasers of community property only. The title of the act is, 'An act to protect innocent purchasers of community real property,' which, under § 19 of article 2 of the state constitution, is too narrow to include within the terms of the act property held by a title other than that specially mentioned."

Appellants have placed too great a weight on too frail a reed.

There is no merit in the appellants' claim of estoppel. They do not plead it, nor support it with any apropos authority. It is clear that there was no admission, statement, or act on the part of the respondent which could be construed as inconsistent with her present position. No inquiry was made of her as to the boundary line before the appellants made their purchase. They were notified as to her claim before doing any work on the strip in question and before setting in place the house which encroaches on that strip. Title to real property is a most valuable right and will not be disturbed by estoppel unless the evidence is clear and convincing. *Tyree v. Gosa*, 11 Wn. (2d) 572, 119 P. (2d) 926.

The judgment is affirmed.

JEFFERS, C. J., BEALS, STEINERT, and MALLERY, JJ., concur.

_____

June 20, 1949. Petition for rehearing denied.