[No. 36134.   Department Two.   November 29, 1962.]

EL CERRITO, INC. et al., Respondents, v. BRUNO RYNDAK et al., Appellants.*

*Reported in 376 P. (2d) 528.

*William B. Christie,* for appellants.

*Riddell, Williams, Voorhees, Ivie & Bullitt,* for respondents.

DONWORTH, J.—This is an appeal by the record title holder of a 2½-foot strip of land from a judgment quieting title to this land in respondents in an action brought under the 10-year adverse possession statute. The case was tried before the court which made certain findings of fact and conclusions of law, both of which are assigned as error.

Respondents move to dismiss this appeal on the ground that appellants failed to comply with Rule on Appeal 51 concerning the service of notice of filing an appeal bond. Appellants did serve a copy of the index of the transcript upon the respondent, which shows that a cash deposit in lieu of a bond was given. Since this is not a jurisdictional matter, it is within this court's discretion to grant or deny the motion. *Hamilton v. Kiona-Benton Irr. Dist.,* 44 Wn. (2d) 421, 268 P. (2d) 446 (1954). Since there is no showing that respondents have been prejudiced in this instance, dismissal of the appeal is not justified. The motion will be denied.

Respondents John G. Young and Elsa C. Young now hold title to the following described real property:

"The South 40 feet of Lot 26, Block 11, Green's Addition to the City of Seattle, as recorded in Volume 2 of Plats, page 73, records of King County, King County, State of Washington."

October 28, 1957, the Youngs sold, by an executory contract of sale, the above described real property, together with adjoining properties not here involved, to respondents Frank J. Capretto and Fredena Capretto, who in turn sold, by

an executory contract of sale, the property to respondent El Cerrito, Inc., a Washington corporation, which is now in possession. The Caprettos and El Cerrito, Inc., have a conditional vendee's interest in the above described property.

In 1930, an apartment house, known as El Cerrito Apartments, was constructed on respondents' property (hereafter referred to as the apartment property) by one Beardsley. March 31, 1936, Beardsley sold and conveyed the apartment property to Captain Severin K. Gilje and Alma Gilje, his wife. Captain and Mrs. Gilje immediately entered into possession of the apartment property and lived in the apartment house until about 1947, at which time they moved out and turned over the management of the apartment house to one of their tenants. In 1949, the Giljes sold the El Cerrito Apartments to Harry W. Boyd and Ruth, his wife. The Boyds entered into possession and lived in the apartment house until they sold the apartment property in 1957 to respondents Young.

Appellants Bruno Ryndak and Margaret Ryndak, his wife, are the record title holders of the real property which abuts upon the north side of the apartment property. Appellants' land will hereafter be referred to as the Ryndak property. The Ryndaks acquired their property in 1948, and since then have resided in the house that was already constructed thereon.

The disputed property is a 2½-foot strip immediately north of the Ryndaks' south property line. The southern edge of the strip constitutes the record 109-foot common boundary between appellants' and respondents' properties. The trial court found that the Giljes and the Boyds (severally) held the disputed property during their entire respective periods of ownership in such a manner as to acquire title thereto by adverse possession if held for the requisite 10-year period, under RCW 4.16.020.

The findings of fact of the trial court as they pertain to respondents' claim of adverse possession based on occu-

pancy by the Giljes and the Boyds may be summarized as follows:

Prior to the Giljes' occupancy, a green picket fence, about 4 feet in height, was constructed on a line substantially parallel to the true north line of respondents' property and approximately 2½ feet north thereof. This fence existed only along the central 39 feet of the disputed area, which is about one third of the length thereof. It remained standing until sometime in 1959 or 1960, when is was removed. The Giljes and the Boyds considered this fence the north line of their property. The pickets of the fence were repaired by Gilje when damaged, and he installed a gate where the fence formed a T, joining it to the apartment house to afford access along the north side of the apartment house building without trespassing on his neighbor's property to the north.

The Giljes planted flowers and raised laurel shrubs on the south side of this fence and north of the true property line. A laurel tree and a holly tree situated at the westerly end of the property and just north of the true lot line were trimmed and cared for by the Giljes.

A cement walk serving the side door of the apartment house was built in 1930, the north edge of this sidewalk being 8 inches or more north of the true line of respondents' property. The eaves of the apartment house extend across the true line approximately 2 inches for the full length of that portion of the apartment house wall directly across from the south wall of appellants' house. The casement windows of the apartment house when fully open extend approximately a foot across the true line and can be washed from the outside only by standing partly on the disputed strip of land. Captain Gilje kept the garbage cans for the apartment house where they projected approximately 2 to 2½ feet north of the true line. Early in the period of Captain Gilje's occupancy, he had a wooden covering constructed for the garbage cans by having holes dug for posts and building a frame around and over the garbage cans. This wooden frame remained until forcibly removed by appellant Ryndak in 1960.

Mrs. Boyd also planted and cared for flowers and ferns on the south side of the fence, but north of the true property line. In addition, she installed flagstones on the south side of the fence, but north of the true line. Harry Boyd and his gardener cared for the laurel tree and the holly tree previously mentioned, and Boyd, just prior to 1957, removed the laurel tree.

Harry Boyd built a 2-foot-wide walk along the north side of the garbage can area to provide better access to the garbage cans; he obtained permission from Ryndak to construct this walk and no claim is made to the land under it. Various tenants of the apartment house raised flowers on portions of the Ryndak property with their permission, and no claim is made as to that property.

The Giljes, for the 13 years of their ownership, and the Boyds, for the 8 years of their ownership, exercised dominion and possession over the disputed 2½-foot strip of land for the entire length of the property. None of the respective occupants or owners of the Ryndak property made claim to any of the land south of the land marked by the above fence from 1936 to at least 1956 or 1957.

■ Although appellants have made nine assignments of error, they admit in their brief that the issues involved are more sharply limited. Appellants' first contention to be considered is that the findings of fact do not support the conclusion that the use and possession of the disputed 2½-foot strip over the entire length of the Ryndak property by, first, the Giljes and, later, the Boyds during the period from 1936 through 1957 was of such a character as to establish title by adverse possession. The character of respondents' possession during the statutory period is one of fact. *Mugaas v. Smith,* 33 Wn. (2d) 429, 206 P. (2d) 332, 9 A. L. R. (2d) 846 (1949). Where the record contains substantial evidence which supports the findings of the trial judge, they will not be disturbed on appeal. *Clausing v. Kassner, ante* p. 12, 371 P. (2d) 633 (1962); *Guyton v. Temple Motors, Inc.,* 58 Wn. (2d) 828, 365 P. (2d) 14 (1961).

With regard to the findings of the trial court, appellants have assigned error to the specific findings that the laurel tree was not on the questioned tract and that the holly tree was actually trimmed by the Giljes. Additional error is assigned to the finding that dominion and possession were exercised by the Giljes and Boyds over the 2½-foot strip *for the entire length of the property* during their respective ownership of the apartment property. A survey of the apartment property, together with photographs admitted in evidence, shows that the stem of the tree was to the west of the brick retaining wall that marked the western extremity of both the Ryndak and apartment properties; nevertheless, the trial court could well have found that the branches and foliage which were trimmed by the Giljes extended over the disputed strip. There is no evidence to support a finding that the Giljes trimmed the holly tree. However, we deem these particulars insufficient, in the light of all the evidence, to warrant disturbing the general findings that the Giljes and Boyds exercised the required dominion and possession over the entire strip, which is necessary to support the adjudication of adverse possession under the facts of this case.

The fact that the apartment house was managed by a tenant during the last two years of the Giljes' ownership does not negate the finding of uninterrupted and exclusive possession by them of the disputed strip of land for the 13-year period. *O'Brien v. Schultz*, 45 Wn. (2d) 769, 278 P. (2d) 322 (1954); *Foote v. Kearney*, 157 Wash. 681, 290 Pac. 226 (1930).

Appellants argue that, if there were adverse possession, at most it covered only the area where the garbage cans were situated, and that the overhang of the eaves and the windows when open could amount to only a prescriptive easement of the air space. Appellants also argue that, because the fence did not extend the entire length of the property but only one third thereof, it could not be a line fence. We are not holding that this was a line fence; we do hold, however, that the facts as found by

the trial court, taken together, show adverse possession of the entire strip for the required period of time. It is not necessary in such a situation that the adverse possession of an owner of residential property claiming an adjoining tract be limited to the actual ground area of structures or improvements which have been built by him beyond his true line. Nor is erection or the existence of a fence a condition precedent to a claim of adverse possession. *Skoog v. Seymour,* 29 Wn. (2d) 355, 187 P. (2d) 304 (1947).

Appellants further assert that the hostility required to constitute adverse possession is not present, since the record indicates that the parties occupying the adjoining property were friendly and neighborly and, furthermore, that the Boyds at one time had offered to buy the disputed strip of land for $1,000. In the law of adverse possession, "hostile" does not mean animosity, but is a term of art which means that the claimant is in possession as owner and not in a manner subordinate to the title of the true owner. *Fisher v. Hagstrom,* 35 Wn. (2d) 632, 214 P. (2d) 654 (1950). The record shows that the Boyds' offer to purchase the strip was made in 1957, when Boyd was negotiating a sale of the apartment property, and a survey made at the time showed that the eaves overhung the true line. The testimony also shows that Mr. Boyd thought he had title but made the offer to expedite his prospective sale. In brief, the record as a whole supports the trial court's conclusion that the use and possession of the strip of land in question, first by the Giljes and later the Boyds, during the period from 1936 through 1957, was actual, uninterrupted, open, notorious, hostile, exclusive, and resulted from a claim made by them, and each of them, in good faith. The trial judge not only saw and heard the witnesses but also viewed the premises in question.

Error is also assigned to the entering of the trial court's second conclusion of law, which reads as follows:

"The Giljes and the Boyds, plaintiffs' predecessors in title, established title to said 2½ foot strip of property by adverse possession, which title has in turn accrued to plaintiffs. Any claim by defendants or their predecessors

in title to said 2½ foot strip is now barred by R.C.W. 4.16-.020."

It appears to be appellants' contention that RCW 4.16.020 requires that, in order to establish title by adverse possession, the disputed property must be held in an adverse manner for the 10-year period immediately preceding the bringing of the action. Appellant also contends that the privity of each of the plaintiff's predecessors in title must be proved. In regard to the first contention, in *Mugaas v. Smith, supra,* this court found that adverse possession of the property in question dated back to 1910, but that after 1928 all of the elements of adverse possession were not apparent. We affirmed the trial court in quieting title in an action brought approximately 20 years after 1928.

■ Appellants, in interpreting the meaning and applicability of the 10-year statute of limitations, fail to recognize the distinction between cases where a person is claiming to have been dispossessed of real property and where a person is claiming that a new title by adverse possession has been acquired. When real property has been held by adverse possession for 10 years, such possession ripens into an original title. Title so acquired by the adverse possessor cannot be divested by acts other than those required where title was acquired by deed. *Mugaas v. Smith, supra; McInnis v. Day Lbr. Co.,* 102 Wash. 38, 172 Pac. 844 (1918). The person so acquiring this title can convey it to another party without having had title quieted in him prior to the conveyance. Once a person has title (which was acquired by him or his predecessor by adverse possession), the 10-year statute of limitations does not require that the property be continuously held in an adverse manner up to the time his title is quieted in a lawsuit. He may bring his action at any time after possession has been held adversely for 10 years.

■ Appellants are, of course, correct in their contention that one who did not himself acquire title by adverse possession must show his privity to the one who did so acquire title if he is basing his claim upon his predeces-

sor's title. The deed from the Giljes to the Boyds contained a description of the apartment property, but did not include a description of the disputed strip of land. As previously discussed, both the Giljes and the Boyds considered the fence to be the north line of their property, and both held the disputed strip in an adverse manner. In *Buchanan v. Cassell,* 53 Wn. (2d) 611, 614, 335 P. (2d) 600 (1959), we said:

"This state follows the rule that a purchaser may tack the adverse use of its predecessor in interest to that of his own where the land was intended to be included in the deed between them, but was mistakenly omitted from the description. . . ."

In the *Buchanan* case we referred to *Faubion v. Elder,* 49 Wn. (2d) 300, 307, 301 P. (2d) 153 (1956), where we said:

"As to point (3), it is apparent that appellant and his predecessors were claiming *more* land than their deeds described. It is sufficient to state that the description in the deeds will be held to include the land in dispute in this case, since, where there is privity between successive occupants holding adversely to the holder of the true title continuously, the successive periods of occupation may be united or tacked to each other to make up the time of adverse holding. *Naher v. Farmer,* 60 Wash. 600, 111 Pac. 768, and cases cited."

Under the facts of this case and the authority above cited, we hold that the failure to include the disputed strip in the deed from the Giljes did not prevent the Boyds from acquiring title by adverse possession. The Boyds quitclaimed their interest in the disputed strip to respondent El Cerrito, Inc., by a separate deed, as the record clearly shows. Thus the necessary privity is established in this case in regard to respondent El Cerrito, Inc.

However, there is no evidence to show that the other respondents (the Youngs and the Caprettos) have any interest in the disputed strip. As to these parties, privity is lacking. No evidence was produced at the trial tending to show that they held the disputed strip in the manner necessary to obtain title by adverse possession. When the

Youngs purchased the apartment property from the Boyds, a survey was prepared in 1957 for John G. Young which clearly showed that the eaves, fence, and walk were on the Ryndak property. It is further noted that the real estate contracts from the Youngs to the Caprettos and from the Caprettos to El Cerrito, Inc., each contained provisions which subjected the sale of the apartment property to encroachments which included eaves, stepping stones, a concrete walk, rockery, and the garbage can stand. Since there was no quitclaim deed or other conveyance of the disputed strip by the Boyds to the other respondents, they, unlike El Cerrito, Inc., failed to establish the necessary privity.

Appellants' assignments of error Nos. 2 and 3 are directed to portions of the oral decision of the trial court. Part of the issues so raised have of necessity been considered in connection with assignments of error directed to the trial court's formal conclusions of law. We have held that parts of the oral decision cannot be assigned as error because the court's final determination is expressed in its findings, conclusion and judgment. The court's oral decision is subject to change by the trial judge at any time prior to the entry of judgment. *Rutter v. Rutter*, 59 Wn. (2d) 781, 370 P. (2d) 862 (1962); *Eyre & Co. v. Hirsch*, 36 Wn. (2d) 439, 218 P. (2d) 888 (1950). However, when the oral decision is consistent with that of the formal findings or judgment of the trial court, the latter are to be read in the light of that decision. *Mertens v. Mertens*, 38 Wn. (2d) 55, 227 P. (2d) 724 (1951); *Kinnear v. Graham*, 133 Wash. 132, 233 Pac. 304 (1925).

In its oral decision, the trial court emphasized the line fence doctrine which was not mentioned in the formal findings or conclusions of law. We need only say that, because of its enumeration of other particular acts of respondents' predecessors mentioned in the oral decision, it is apparent that the court was not relying upon the fence alone for the elements of hostile and notorious possession.

In assignment of error No. 8, appellants urge that

the trial court erred in refusing to enter (and in failing to render judgment upon) their proposed findings and conclusions of law 1, 2, 3, and 5. None of these is set out verbatim in appellants' brief. Rule on Appeal 43, RCW Vol. 0, reads, in part, as follows:

". . . No error assigned to any finding or findings of fact made or refused will be considered unless so much of the finding or findings as is claimed to be erroneous shall be set out verbatim in the brief. . . ."

The error assigned to the refusal to make the proposed findings of fact will not be considered because (as the appellants admit in their reply brief) they have failed to comply with the above-quoted rule.

Nor will we consider that portion of assignment of error No. 8, directed to proposed conclusions of law, because appellants have not argued this assignment in their brief. *Tilly v. Department of Labor & Industries,* 52 Wn. (2d) 148, 324 P. (2d) 432 (1958).

In view of the disposition made of the issues already raised, no discussion of appellants' counterclaim is necessary.

The judgment is affirmed as to respondent El Cerrito, Inc. As to respondents Frank J. Capretto and Fredena Capretto, his wife, and John G. Young and Elsa C. Young, his wife, the judgment is modified by striking their names therefrom since the record contains no evidence to support a claim that they have any interest in the disputed strip of land. As so modified, the judgment is affirmed.

Respondent El Cerrito, Inc., will recover its costs in this court from appellants.

FINLEY, C. J., OTT, HUNTER, and HAMILTON, JJ., concur.

January 31, 1963. Petition for rehearing denied.