[No. 8061-3-II.  Division Two.  August 5, 1986.]

THE STATE OF WASHINGTON, *Appellant,* v. RONALD C. HALES, *Respondent.*

*William H. Griffies, Prosecuting Attorney,* and *Barbara L. Corey–Boulet, Deputy,* for appellant.

*John R. Muenster* and *Mestel & Muenster,* for respondent.

ALEXANDER, J.—The State appeals from an order of dismissal granted to the defendant, Hales, because of the State's alleged failure to comply with CrR 3.3. We hold that Hales' failure to return to the work release facility after the information was filed constitutes "fault or connivance" as a matter of law, and we, therefore, reverse and remand for trial.

The State filed an information on June 6, 1983, charging Hales with willfully failing to return to a work release program in contravention of RCW 72.65.070. According to the information, Hales failed to return to the Tacoma Work/Training Release Program on May 23, 1983. A bench warrant was issued for Hales' arrest on June 7, 1983, and he was taken into custody almost a year later, on May 22, 1984. Hales was arraigned on May 23, 1984, and on July 16, 1984, he moved to dismiss for an alleged violation of CrR 3.3.

At the hearing on Hales' motion, an incident report was admitted into evidence upon stipulation of the parties. The report revealed that when Hales did not return to the work release facility, a correctional officer called the home of Hales' fiancee, Lindae Soto, at a telephone number known to the correctional authorities. Kim Soto, Lindae's sister, answered at that number and indicated that Hales had been with Lindae earlier that day, but that he was on his way back to the work release facility. The incident report listed Lindae Soto's residence as 10414 N.E. 15th Avenue, Bellevue, Washington.

On May 24, 1983, a person identified as Mary Gibson called the work release facility and indicated that Lindae Soto had dropped Hales off in the Lakewood area near Tacoma and that Hales was walking back to the facility. Hales' probation officer surveyed the Lakewood area in an effort to find Hales, but did not locate him. Hales never returned to the work release facility.

Hales' mother–in–law, Maria Consuela Soto, testified at the hearing. Consuela indicated that the address she shared with Lindae Soto was 104*16* N.E. 15th St., Bellevue, Washington. Consuela testified that Hales had come to live with them on May 24, 1983, at that same Bellevue address. According to Consuela, Hales married Lindae on June 25, 1983. Consuela testified further that around Christmastime 1983, Hales changed his name to Paul Goodson. Consuela said that Hales had four or five different jobs during the time that he and Lindae lived with her.

Consuela's testimony revealed that from January through March 1984, Hales and Lindae moved away from Consuela's residence to Ballard. Consuela said that during that period she received one telephone call from the Bellevue police asking if Paul Goodson was there. She said she responded to the police that Goodson was not living at her residence.

In March 1984, Hales and Lindae moved back in with Consuela at the Bellevue address. Consuela testified that Hales started a landscaping business around April 1984, using the name Paul Goodson. Police arrested Hales at Consuela's residence on May 22, 1984. Some time before Hales' arrest, he had dyed his hair from medium brown to dark brown or black.

A superior court judge granted Hales' motion for dismissal for what it found was the State's failure to comply with CrR 3.3. Although the court did not make written findings of fact, the court stated in its oral opinion that the case should be dismissed because Hales was amenable to process for at least 6 months after the filing of the information. The court therefore found that the 90–day "time for trial" under CrR 3.3(c)(1) began to run on June 3, [*sic*] 1983, the day the information was filed and that the 90–day time period expired on or about September 2 or 3, 1983.

As a preliminary matter, Hales argues that because the State did not assign error to the trial court's oral findings, those findings must be treated as verities on appeal. Hales overlooks the fact that although the oral decision of the

trial court may be used to interpret consistent written findings, a party may not assign error to the oral findings of the trial court. *El Cerrito, Inc. v. Ryndak,* 60 Wn.2d 847, 857, 376 P.2d 528 (1962). Therefore, this court need not treat the trial court's oral findings as verities on appeal. However, because there appears to be no real dispute over the facts for purposes of the motion, we are not inclined to remand the matter to the Superior Court for the entry of written findings.

The State's primary argument in support of reversal is that Hales, through his own fault and connivance, caused the delay between the filing of the information and the arraignment. The State asserts, therefore, that the speedy trial clock should begin running on the date of Hales' arraignment and not on the earlier date the information was filed. We agree.

Under CrR 3.3(c)(1), amended effective August 1, 1980, "[a] defendant released from jail . . . shall be brought to trial not later than 90 days after the date of arraignment." The defendant must, however, be arraigned "promptly" after the indictment or information is filed. CrR 4.1(a).

In *State v. Striker,* 87 Wn.2d 870, 871, 557 P.2d 847 (1976), the court observed that the rules do not authorize a period of delay between the filing of an information and the arrest or summons of the defendant, where the defendant is "amenable to process." The court held, therefore, that "where contrary to the expectation expressed in the rules" there is a period of delay between the filing of the information and the time that the defendant is brought before the court, the time for trial specified in CrR 3.3(c)(1) begins to run the day the information is filed, rather than on the day of the arraignment. *Striker,* 87 Wn.2d at 875. The court recognized an exception, however, when the delay between the filing of the information and the arraignment is caused through the "fault or connivance" of the defendant. *Striker,* 87 Wn.2d at 872.

Here, the facts reveal that Hales was at fault and was conniving when he willfully failed to return to the work

release facility.[1] For purposes of analyzing compliance with CrR 3.3, it can be said that Hales' fault and connivance continued from the date the information was filed until the date of his apprehension.

In addition, Hales engaged in other acts with the apparent intention of avoiding apprehension during the same period. Beginning in December 1983, Hales moved, changed his name to Paul Goodson, dyed his hair, and worked at four or five different jobs. These actions, as well as his failure to return to the work release facility after the charges were filed, indicate active fault and connivance.

Hales' failure to return to the work release facility and his other attempts to avoid apprehension were clearly at the root of the delay between the filing of the information and his arraignment. The 90–day "time for trial" under CrR 3.3 should therefore begin on the date Hales was arraigned, not on the day the information was filed as in *Striker.* Hales was arraigned on May 23, 1984, and the court ordered the dismissal of Hales' prosecution before 90 days had elapsed from his arraignment. The dismissal was therefore improper.

Although Hales argues that he did not engage in any actions that could constitute fault or connivance until *after* an inordinate period of time had passed after the information was filed, his argument is unpersuasive. From the moment that Hales failed to return to the work release facility as he was required by law to do, Hales was, in the words of the statute, an "escapee and fugitive from justice". RCW 72.65.070. We hold as a matter of law that this failure to return placed him in a state of fault and connivance that continued from the date the information was filed until he was apprehended. To reward a fugitive from work release

---

[1]We recognize that the charge in this case is willfully failing to return to a work release facility. RCW 72.65.070. Although we accept the evidence presented at the hearing as relevant to the issue of Hales' fault and connivance for purposes of determining whether the dismissal was proper under CrR 3.3(c)(1), this opinion should not be construed as a determination of Hales' guilt on the criminal charge. That determination will rest with the trier of fact at trial.

for his disobedience of the law and for his attempts to avoid apprehension would be contrary to the spirit of the criminal rules relating to time for trial. We will grant no such reward.

The order of dismissal is reversed, and this case is re-manded for trial.

WORSWICK, C.J., and PETRICH, J., concur.

Review denied by Supreme Court October 29, 1986.