[No. 18002. Department Two. November 16, 1923.]

ANNA J. KING, *Respondent*, v. W. S. BASSINDALE *et al.*, *Appellants*.[1]

ADVERSE POSSESSION (25)—"HOSTILE" CHARACTER—TO BOUNDARIES OR FENCES. Title by adverse possession up to a boundary line fence is acquired by one who purchases a lot in the belief that the fence marked the true boundary line, and maintained, for the statutory period, exclusive, open and notorious possession under a claim of right.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered December 23, 1922, upon findings in favor of the plaintiff, in an action in ejectment, tried to the court. Affirmed.

*Blackburn & Gielens*, for appellants.

*H. P. Burdick* and *H. G. Vick*, for respondent.

FULLERTON, J.—On January 30, 1906, one Lydia Stuhr purchased Lot 5, in Block 621, of the Central Addition to the city of Tacoma. The lot was 25 feet in width, and fronted upon a public street to the west. At the time of the purchase, there was a fence purporting to mark the dividing line between the lot and

[1]Reported in 220 Pac. 777.

lot 4, of the same block, which abutted lot 5 upon the north. This fence, it developed later, was wholly upon lot 4, cutting off from that lot a strip of land five feet in width for its entire length. There was, at the time of the purchase, also, a dwelling house on the lot as enclosed by the fence and other fences, which fronted towards the west of the lot. The house was something more than thirty feet back from the west end of the lot. It was erected partly on lot 5 and partly on lot 4, the northerly side of the house extending to the fence before mentioned.

Mrs. Stuhr entered into possession of the property shortly after her purchase. She assumed that the fence marked the true north boundary of her lot, and that the house was wholly upon the lot purchased. Some few years later, the precise year Mrs. Stuhr was unable to remember, the fence having become somewhat decayed, was demolished by a wind storm. She called the fact to the attention of a Mr. Spicer, the then owner of the west twenty feet of lot 4, with a view to a reconstruction of the fence. Mr. Spicer told her, to use her own language, to leave it down; he made no claim, however, that the fence did not mark the true dividing line between the lots. Mrs. Stuhr shortly thereafter removed the remains of the fence and planted rose bushes and other shrubbery to make the line of the fence. Mrs. Stuhr continued to occupy, care for, and improve the property until about November 7, 1919, when she conveyed lot 5 by warranty deed to the respondent in the present action.

Mr. Spicer acquired title to the west 30 feet of lot 4, on November 16, 1905. In 1916, he conveyed the property, with other lands, to the appellants. Two deeds were executed to convey the property; one a warranty deed conveying the other lands mentioned and the north 20 feet of the west 30 feet of lot 4; and the other, a

quitclaim deed conveying the south 5 feet of the west 30 feet of the same lot. Sometime after purchasing the property, the appellants entered upon the property and constructed a fence on the true lot line between lots 4 and 5. The fence ran from the street on the west for a distance of 30 feet, thence north crossing the assumed lot line. This fence was directly in front of the house of the respondent and interfered with ingress thereto and egress therefrom.

After the fence was constructed, Mrs. Stuhr conveyed to the respondent the south five feet of lot 4, whereupon the respondent began the present action to eject the appellants from this part of the lot, and to quiet her title thereto. The trial resulted in a decree in her favor, and this appeal followed.

The evidence leaves but little doubt that Mrs. Stuhr purchased lot 5 under the belief that the fence purporting to mark the dividing line between lot 5 and lot 4 was the true boundary line, and that she continued in this belief until after she sold the lot to the respondent. There is little room for doubt, also, that she maintained exclusive possession of the property during this period of time, and that her possession was open and notorious and under a claim of right.

This court has repeatedly held that possession of this sort constitutes adverse possession, and, if continued for a period of ten years, without interruption, will confer title to the land so held in the holder. *Bowers v. Ledgerwood,* 25 Wash. 14, 64 Pac. 936; *Erickson v. Murlin,* 39 Wash. 43, 80 Pac. 853; *Weingarten v. Shurtleff,* 51 Wash. 602, 99 Pac. 739; *Wissinger v. Reed,* 69 Wash. 684, 125 Pac. 1030; *Alverson v. Hooper,* 108 Wash. 510, 185 Pac. 808; *Metropolitan Building Co. v. Fitzgerald,* 122 Wash. 514, 210 Pac. 770.

We have not overlooked the argument of the appellants that, to constitute adverse possession, the pos-

session must have been hostile in its inception, and the further argument that Mrs. Stuhr paid taxes only upon lot 5. But the term "hostile," as here used, does not import enmity or ill-will, but rather imports that the claimant is in possession as owner, in contradistinction to holding in recognition of or subordination to the true owner. 2 C. J. 122. In its true sense, the evidence in the present case, to our minds, amply shows that Mrs. Stuhr at all times held in hostility to the true owner. Nor does the fact that she paid taxes only according to the legal description of her property militate against her claim. *Alexander v. Bennett,* 91 Wash. 688, 158 Pac. 534. As a matter of fact, the record does not show that Mrs. Stuhr did not pay taxes on this property. She paid all that was assessed against it, and it is more probable that the assessor viewed and valued it as it appeared upon the ground, than that he viewed and valued it according to the true lot lines.

In our opinion, the judgment of the lower court was right, and it will stand affirmed.

MAIN, C. J., MITCHELL, BRIDGES, and PEMBERTON, JJ., concur.