[No. 39095.     Department Two.     November 16, 1967.]

CARL W. KRONA et al., *Appellants*, v. PEARL F. BRETT, *Respondent.**

*Reported in 433 P.2d 858.

536

*Burkey, Marsico & Rovai,* by *George F. Marsico,* for appellants.

*Erick R. Alden* (of *Davies, Pearson, Anderson & Pearson*), for respondent.

NEILL, J.—Plaintiffs appeal from dismissal of an action to quiet title by adverse possession under the 10-year statute, RCW 7.28.010, to a tract of land 50 feet in length and 2.85 feet in width located between plaintiffs' and defendant's dwellings. The parties' properties are adjoining rectangular lots, each approximately 50 by 60 feet. A home is constructed on each lot facing the western (street) boundary. When plaintiffs acquired their property in 1923, a wooden lattice fence extended from the eastern (rear) boundary to within approximately 13 feet of the street boundary, serving to separate their property from the adjoining property. At the time of purchase, they were informed by a real-estate man and by an attorney who had made a title search that this fence constituted the boundary line. In 1932, plaintiffs constructed a concrete block wall running from the eastern boundary for a distance of approximately 10 feet along the true boundary line and thus parallel with and approximately 3 feet north from the original fence. They testified that this wall was intended as a bulkhead or retaining wall for a fish pond located in the southeast portion of their lot, was not intentionally placed along what later proved to be the true boundary line, and that the wall was so constructed in order to provide a space in which a compost heap could be concealed from the rest of their property.

Defendant acquired her property in 1938, at which time she observed the lattice fence. In 1952, defendant removed the original lattice fence and, in the same location, constructed a cyclone wire fence imbedded in a concrete foundation. She also placed a row of concrete blocks on the ground, running for a distance of approximately 13 feet from the western end of the cyclone fence to the street

sidewalk. Plaintiffs testified that prior to the construction of the cyclone fence and the row of concrete blocks by defendant, they had placed a row of bricks flush with the ground in the same location as the row of concrete blocks. The property on plaintiffs' side of the row of bricks was planted in lawn; the property on defendant's side was planted in rose bushes. The purpose of these bricks was to facilitate plaintiffs' mowing the grass on their side and to keep the dirt from defendant's rose bed from falling on to plaintiffs' side. Defendant, however, testified that the row of bricks was placed in the ground by plaintiffs after she had constructed the cyclone fence and concrete blocks in 1952.

In January of 1965, after a survey of her property disclosed that the true boundary was 2.85 feet north of the cyclone fence, defendant removed the fence, but left the concrete foundation and the 13-foot line of concrete blocks undisturbed. One month later, plaintiffs constructed a new fence, running along the same line as the first two fences, reaching from the eastern boundary to the 13-foot line of concrete blocks. In April of 1965, defendant constructed a cyclone fence running from the western boundary 13 feet along the true survey line dividing the two lots and thus 2.85 feet into the lawn maintained by plaintiffs. During the construction of this fence, the defendant allegedly caused damage to plaintiffs' lawn and flower beds, for which damage plaintiffs seek an award of $500. Plaintiffs removed this fence after defendant refused to do so.

Plaintiffs had never surveyed their property, had at all times considered the original fence line to be the true boundary, and had used and claimed title to all the property up to this line. They had had no controversy with defendant's predecessor in title as to the existence of the original fence; and no question as to the true boundary was raised between the parties until defendant constructed the 13-foot wire fence along the true boundary line in 1965. Defendant claimed that she had no knowledge of the location of the true boundary until the survey was made in 1965 and that she did not intend the fence constructed by

her in 1952 to be the true boundary. Defendant concedes, however, that she placed the fence on the original fence line because she mistakenly thought it was the boundary between the two lots, though not necessarily the true legal boundary.

Plaintiffs' use and possession of the disputed strip of land consisted of the following: (1) mowing the lawn up to the original fence line for a distance of approximately 13 feet east of the western boundary; (2) planting flower beds along the original fence line, which beds extended approximately 20 inches out from the fence and were surrounded by a border of bricks; (3) constructing between their house and the flower beds a brick patio which extended partially onto the disputed strip; (4) placing a small removable ornamental wire fence around part of the flower beds and along the 13-foot row of concrete blocks; and (5) maintaining a compost heap on the disputed strip between the retaining wall of the fish pond and the original fence line.

The trial court properly ruled that the theories of "oral boundary agreement," "estoppel" and "acquiescence" were not applicable and that the sole question for determination was whether there were sufficient acts of adverse possession by plaintiffs to constitute adverse possession.

The trial court dismissed plaintiffs' complaint with prejudice and quieted title to the property in defendant, ruling that plaintiffs had failed to sustain their burden of proof. It concluded that (1) there was no evidence that plaintiffs had ever communicated to defendant that they were claiming the disputed strip; (2) plaintiffs' subjective thoughts or communications to a real-estate man were not communicated to defendant; (3) plaintiffs' acts were equivocal in that, about the time crucial to their claim of adverse possession, they built a fish-pond retaining wall on the true boundary line; and (4) the hostile and adverse character and quality of their claim to the strip did not manifest itself until the years of 1964 and 1965 just prior to the commencement of their action, far short of the 10-year period necessary to perfect their title by adverse possession.

■ When an action, as in the case at bar, is brought to establish title by adverse possession of a strip of land dividing the parties' properties, the plaintiff is not precluded from recovery merely because a fence dividing the properties was placed in that location by the mistake of the parties' predecessors in interest, if the plaintiff has openly and notoriously evinced the necessary intention to claim the land he was using up to the fence. *Faubion v. Elder,* 49 Wn.2d 300, 301 P.2d 153 (1956); *O'Brien v. Schultz,* 45 Wn.2d 769, 278 P.2d 322 (1954); *King v. Bassindale,* 127 Wash. 189, 220 Pac. 777 (1923).

■ In defining what constitutes sufficient adverse possession, this court, in *Butler v. Anderson,* 71 Wn.2d 60, 64, 426 P.2d 467 (1967), reiterated the well-established rule that:

> [T]o constitute adverse possession, there must be actual possession which is uninterrupted, open and notorious, hostile and exclusive, and under a claim of right made in good faith for the statutory period. *Skansi v. Novak,* 84 Wash. 39, 146 Pac. 160 (1915). The nature of possession and attendant acts necessary to constitute adverse use as to a residential parcel or property are deemed sufficient if a person pleading the statute takes and maintains such possession and exercises such open dominion *as ordinarily marks the conduct of owners in general, in holding, managing, and caring for property of like nature and condition. Mesher v. Connolly,* [63 Wn.2d 552, 388 P.2d 144 (1964)]. . . . (Italics ours.)

In other words, in determining whether the use and occupation of claimed lands has been sufficient to support title based on adverse possession, the *character* of the land should be considered. *Bowden-Gazzam Co. v. Hoqan,* 22 Wn.2d 27, 154 P.2d 285 (1944). The necessary use and occupancy need only be of the character that a true owner would assert *in view of its nature and location. Frolund v. Frankland,* 71 Wn.2d 812, 431 P.2d 188 (1967).

In *Mesher v. Connolly,* 63 Wn.2d 552, 388 P.2d 144 (1964), we held that the trial court must consider that where the strip crossed a lawn planted between two houses little evidence of ownership or hostile possession could be

presented except for the manner in which the lawn was cut. Thus, we held that, although cutting the entire lawn between the two houses could well have been an act of neighborly accommodation, the plaintiff's cutting the lawn only along the claimed strip could be considered as indicative of a claim of ownership and should have been considered in connection with more conclusive acts of dominion, exclusive ownership and hostile possession at each end of the claimed strip in determining whether adverse possession of the entire strip had been established. In the case at bar, plaintiffs' mowing the lawn up to the original fence line, considered in connection with their constructing a brick patio and maintaining a flower bed and compost heap on the disputed strip, clearly constituted such possession and open dominion "as ordinarily marks the conduct of owners in general, in holding, managing, and caring for property of like nature and condition." Considering the narrow width and confined location of the disputed strip, it is difficult to conceive of what more any claimant could have done to manifest his possession and control over the property.

■ As to the trial court's finding that the character of plaintiffs' claim was not sufficiently "hostile," this court has consistently held that: "In the law of adverse possession, 'hostile' does not mean animosity, but is a term of art which means that the claimant is in possession as owner and not in a manner subordinate to the title of the true owner." *El Cerrito, Inc. v. Ryndak,* 60 Wn.2d 847, 854, 376 P.2d 528 (1962). See also, *Mesher v. Connolly, supra; Fisher v. Hagstrom,* 35 Wn.2d 632, 214 P.2d 654 (1950). The conduct of plaintiffs in the case at bar clearly does not indicate that they considered their claim to the disputed strip to be subservient to any claim defendant might have had.

■ With respect to the trial court's finding that plaintiffs had not communicated to defendant their intention to claim the strip, we have held that such intention may be evidenced either by the acts of the adverse claimant or by

his declarations. *Faubion v. Elder, supra.* In other words, an express declaration by plaintiffs that they intended to claim the disputed strip was not necessary to initiate the running of the statutory period nor to support plaintiffs' action to establish title by adverse possession. *O'Brien v. Schultz,* 45 Wn.2d 769, 278 P.2d 322 (1954). As we held in *O'Brien,* quoting from *McAuliff v. Parker,* 10 Wash. 141, 38 Pac. 744 (1894), " . . . *'the presumption is that if the adverse possession is open and notorious the owner of the title will know it.'* (Italics ours.)" In the case at bar, plaintiffs used and occupied all of the disputed strip up to the original fence line in an open and notorious manner throughout the requisite term.

Finally, we cannot agree with the trial court's finding that plaintiffs' acts of adverse possession were equivocal merely because they built a fish-pond retaining wall on the true boundary line. The undisputed testimony revealed that (1) neither plaintiffs nor defendant knew at the time that the retaining wall was placed on the true boundary; (2) the retaining wall was placed approximately 3 feet from the original fence line in order to provide a space in which to conceal a compost heap from the rest of plaintiffs' property; and (3) at all times since the construction of the retaining wall, plaintiffs have maintained a compost heap in the space between the wall and the original fence line. All of plaintiffs' acts were unequivocal and consistent with their claim to the disputed strip.

Both parties cite and discuss *Niven v. Sheehan,* 46 Wn.2d 152, 278 P.2d 784 (1955), in which this court held at 155:

> When property is held continuously during the statutory period of ten years up to a barrier recognized and accepted as the boundary line between it and adjoining property, under a claim of right as owner, although the true line is on the property of the person or persons so holding, that portion between the true line and the recognized barrier is held adversely to the true owner. (Citing cases.)

The barrier, a concrete rockery, was in existence when both parties purchased their property; and both parties

always used and occupied their property up to but never beyond the barrier. The party claiming according to the true boundary line admitted that until she had a survey made she believed that the barrier formed the actual boundary as did the party claiming adversely. Defendant would distinguish *Niven, supra,* by pointing out that the barrier therein ran the complete length of the disputed line whereas here the fence was 13 feet short of reaching the street. However, in *Frolund v. Frankland, supra,* we stated at 806: "[T]he nature and use of the properties involved, and the fact that any boundary line between them necessarily followed a straight course negates . . . [the] argument." In the case at bar, the fence was in existence when both parties purchased their lots; and both parties used and occupied their property up to the fence but never beyond it.

Defendant further relies on *Brown v. Hubbard,* 42 Wn.2d 867, 259 P.2d 391 (1953). However, in that case the testimony showed the claimant intended to claim only to the true boundary line irrespective of the location of the fence which was later shown to be over on defendant's premises, whereas in the case at bar plaintiffs' testimony is unequivocal that they claimed to the fence and defendant's attempts on cross-examination to elicit testimony which would bring her within the *Brown* case were unsuccessful. Plaintiffs clearly considered the original fence line to be the true boundary. Although defendant contends that she never considered the fence line to be the true legal boundary, her conduct simply does not support her contention.

In *Mugaas v. Smith,* 33 Wn.2d 429, 430, 206 P.2d 332, 9 A.L.R. 846 (1949), we held that:

> The character of the respondent's possession over the statutory period is one of fact, and the trial court's finding in that regard is to be given great weight and will not be overturned unless this court is convinced that the evidence preponderates against that finding.

█ After a careful review of this record, we are of the opinion that there was no substantial evidence to sustain

the trial court's findings of fact and its conclusions of law drawn therefrom; rather, we believe that by the evidence presented, plaintiffs met their burden of proving all the elements necessary to establish title to the disputed strip of land by adverse possession.

Plaintiffs abandoned their claim for damage to flower beds and lawn as they offered no proof thereon, did not propose any findings of fact, conclusions of law or judgment thereon to the trial court, and did not submit this issue in their brief.

The judgment is reversed and the cause is remanded for entry of judgment quieting title to the disputed strip of property in the plaintiffs.

HILL, DONWORTH, and HAMILTON, JJ., and OTT, J. Pro Tem., concur.