**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| MERCEDES BAUDRAND and JAMES BAUDRAND, husband and wife, | No. 55493-3-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| CINDY IVERSEN, | |
| Appellant. | |

WORSWICK, J. — Cindy Iversen appeals a Judgment and Decree Quieting Title, that established title to a six foot and six inch strip of grass in her neighbors, James and Mercedes Baudrand. Iversen argues (1) the Baudrands did not adversely possess the disputed area because they mowed the strip as a neighborly accommodation. Iverson alternatively argues (2) the Baudrands are equitably estopped from asserting title,[1] and the trial court erred (3) by permanently enjoining her from entering or encroaching on the Baudrands' land, and (4) by composing an inadequate legal description that referred to a trial exhibit.

We hold that the Baudrands adversely possessed the disputed area and are not estopped from asserting title. However, we hold that the trial court erred in issuing a permanent injunction

---

[1] Iversen also argues that the parol agreement doctrine bars the Baudrands from asserting title. However, because she raises the argument for the first time on appeal, we do not address it. RAP 2.5.

No. 55493-3-II

against Iversen and composing an inadequate the legal description. Thus, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

FACTS

A.    *Background*

In 1995, the Baudrands purchased property located at 224 Tracy Avenue, Port Orchard, from Leonard Munroe. The property is adjacent to and north of the property currently owned by Iversen. Iversen acquired her property in 2014 at a foreclosure sale. When the Baudrands acquired their property, William Rooms owned the Iversen property. Rooms died in 2011. The area subject to litigation is a strip of grass with minimal landscaping between the Baudrands' garage and Iversen's driveway.

B.    *Maintaining the Strip and Assisting Rooms*

Munroe's grandson, Allan Muyskens, also lived on Tracy Avenue and mowed Munroe's lawn, including the disputed strip, from the time he was 12 years old. When Muyskens became an adult, he purchased a house in the neighborhood. At some point toward the end of his life, Rooms became dependent on a wheelchair, and Muyskens spoke with Rooms about mowing Rooms's backyard and cutting a hedge. Muyskens never discussed maintaining the disputed strip with Rooms. After Rooms became a "convalescent," Muyskens mowed Rooms's backyard and James Baudrand mowed Rooms's front yard. 1 Verbatim Report of Proceedings (VRP) (Oct. 20, 2022) at 70.

Between 1995 and 2014, the Baudrands and people on their behalf regularly mowed and maintained the disputed strip of land. No other person maintained the area during this time.

2

C.     *Filings and Surveys*

In 1995, the Baudrands replaced an existing garage in the southeast corner of the property and obtained permits from the city, which included obtaining a variance. The Baudrands submitted a variance request that showed the setback from the corner of the garage to the shared property line with the Rooms's property was six feet and six inches. By this measurement, the variance request represented that the Baudrands owned the disputed strip. Rooms was aware of the variance request and did not object.

The six foot and six inch setback is the disputed area subject to litigation. The type of vegetation growing on the disputed strip was similar to that on the Baudrands' property. The area acted as a grassy buffer between the Baudrands' garage and the Iversen's driveway with no other specific utilitarian purpose.

In 2001, the Baudrands, who owned four adjacent lots,[2] recorded a short subdivision lot line adjustment in Kitsap County, adjusting the western border of the Baudrand property. Attached to this adjustment was a survey conducted by Robert Emerson of N.L. Olson & Associates, Inc. (Emerson survey). The Emerson survey incorrectly located the southern boundary of the Baudrand property. The Emerson survey showed the Baudrand/Rooms southern property line to be further to the north by three to four feet than the true property line. In 2004, the Baudrands recorded another boundary line adjustment involving their western boundary based again on the erroneous Emerson survey.[3]

---

[2] The other parcels owned by the Baudrands are not subject to this quiet title action.

[3] These boundary line adjustments did not involve the Baudrands' southern border.

D. *Shed, Survey Stake, and String Line*

Shortly after Iversen bought her property in 2014, James Baudrand helped her locate a survey stake on the western boundary line of the Baudrands' property. The survey stake was based on the erroneous Emerson survey.

Sometime after Iversen moved in, the Baudrands built a shed with a privacy fence on the western portion of their yard, about five feet away from the Iversen's garage. Iversen objected because she claimed it blocked her water view. The Baudrands then moved the shed to the other side of the property. After the dispute over the Baudrands' shed, Iversen strung a line from the southwest boundary marker to a concrete pin near the Baudrands garage. A year later in 2017, Iversen replaced the string line with a fence almost touching the Baudrands' garage. The fence was located on the disputed area.

The Baudrands filed a complaint against Iversen to quiet title to the disputed strip of land. In an amended complaint, the Baudrands asserted title through adverse possession and recognition and acquiescence, and they sought quiet title of the disputed property, barring Iversen from having any claim to the property, ejectment, and trespass damages. They did not seek injunctive relief. Iversen asserted the defense of estoppel, and also counterclaimed for quiet title to the disputed property.

E. *Trial Testimony and Decisions*

The matter proceeded to a bench trial. Witnesses testified to the facts above.

Muyskens specifically testified that he and Rooms did not discuss mowing the disputed strip of land, just the front and the back of the yard. Muyskens also testified that his grandparents built and lived in the Baudrands' home before they sold it to the Baudrands, and

Muyskens regularly mowed the disputed area because his grandfather said "that's what [we] owned up to the garage." 1 VRP (Oct. 20, 2020) at 58. Muyskens approximated this area as "at least six feet" from the corner of the garage to Iversen's driveway. 1 VRP (Oct. 20, 2020) at 62. This approximation included the disputed area.

In addition, Muyskens testified that the Baudrands maintained the disputed area for at least 20 years, and that he had never seen Rooms use the disputed property. James Baudrand also testified that he mowed right up to the gravel driveway until Rooms was incapacitated, and only then did he start mowing the whole yard. The Baudrands' landscaper, Wendy Walker, testified that she started mowing the Baudrands' yard in 2010. She testified that she always mowed up to the gravel driveway.

James Baudrand testified that in addition to landscaping the area, he maintained the lilac bushes, placed a little garden birdbath and welcome tile, and planted a few plants in the disputed area. He also testified that he used the disputed area to get back in the yard. And, James Baudrands took down apple trees and blackberry bushes to make the area more accessible when he moved in. Mercedes Baudrand testified that they installed the birdbath when they first moved into the property in 1995. The Baudrands testified that they assumed they owned the disputed property, and that they maintained it as their own the entire time they owned the Baudrand property.

Iversen testified that the disputed area was overgrown when she purchased the property, and that she had placed the string line to "clarify" the boundary line. 2 VRP (Oct. 21, 2022) at 190. After she placed the string line, the Baudrands never said anything about it. She testified

that the reason James Baudrand moved the location of his shed is because she told him it was on the property line.

The trial court entered findings of fact and conclusions of law, entered a Judgment Quieting Title in the Baudrands, ejected Iversen, and ordered that she must remove the fence encroaching on the Baudrands' property and further permanently enjoined Iversen from encroaching on the Baudrands' property. The trial court also determined that Iversen failed to prove her claims for trespass, ejectment, or adverse possession.

The trial court made the following relevant findings of fact "by a preponderance of the evidence":

19. Between 1995 and 2014 the Baudrands and people on their behalf mowed a strip of land and took care of the area around the lilac plants that were planted in the disputed area to the north of the Baudrands garage. The mowing and other maintenance were done regularly. No other maintenance of this area was done by anyone other than the Baudrands or people on their behalf.

19 n.11. The court finds that the Baudrands and their predecessor's use of the disputed area exceeds the period from 1995 to 2014 but cannot find with certainty when the use began. It ended when Ms. Iversen constructed her fence that encroaches on the property the Baudrands have acquired by adverse possession.

20. Mr. Rooms was able to garden during this time, at first, but towards the end of his life he was in a wheelchair and in pain.

21. The area of the Iversen Property that the Baudrands maintained is grass/slash lawn similar to the character of the grass/slash lawn on the adjacent Baudrand Property to the west of the Baudrand garage. It is a grassy buffer between the garage and the driveway on the Iversen Property There is no other specific utilitarian use of this area.

22. The Baudrands used this area openly and notoriously for a period of over ten years. The use was continuous, exclusive, and hostile to the rights of Mr. Rooms and Ms. Iversen. The use by the Baudrands was of the nature that a true owner would assert in view of the nature and location of the property.

. . . .

6

25. There was insufficient evidence presented by the Baudrands or Ms. Iversen to prove claims of mutual recognition and acquiescence or any express agreement between Mr. Rooms (or Ms. Iversen) and the Baudrands (or their predecessors). There was no physical demarcation of a line on the ground.

. . . .

28. Ms. Iversen claims that the Emerson survey estops the Baudrand from making claims to her property. But Ms. Iversen admitted that she did not review the Emerson survey prior to her purchase of the Iversen Property. Because Ms. Iversen did not show she relied on the Emerson survey, she cannot prove her estoppel claim. She has not proven any of the elements of estoppel by clear and convincing evidence.

CP at 177-80. The trial court then entered the following relevant conclusion of law:

1. . . . Here, the facts set out above meet [the adverse possession] elements and the Baudrands have proven their adverse possession claim to the area described above. Although the property line described by the Court may not be the precise area adversely possessed, Washington case law gives a trial court wide discretion to "create a penumbra of ground around areas actually possessed when reasonably necessary to carry out the objective of settling boundary disputes." The Court does so here.

2. The Baudrands are thus entitled to a judgment quieting title in the area above described and ejecting Ms.1verson from the Baudrand Property. Ms. Iversen is ejected from and must remove her fence that encroaches on the Baudrand Property.

3. All other claims by the parties have not been proven and will therefore be dismissed.

4. Upon presentation the Court will enter an order quieting title as set forth above and for judgment denying Ms. Iversen's claims and for statutory costs and statutory attorney's fees.

5. The Court declines to award reasonable attorney's fees to either party.

Clerk's Papers (CP) 180-81.

The trial court also entered a judgment and decree quieting title in the Baudrands. The judgment contains a legal description that includes a reference to "Exhibit Number 11." CP at

229. Additionally, the judgment permanently enjoined Iversen from entering upon or encroaching on the disputed property despite an absence of findings of fact in this regard, and despite that the Baudrands' complaint did not include a claim for a permanent injunction. The trial court also denied Iversen's motion for reconsideration. Iversen appeals.

ANALYSIS

We review a trial court's findings of fact following a bench trial to determine whether those findings are supported by substantial evidence. *In re Estate of Barnes*, 185 Wn.2d 1, 9, 367 P.3d 580 (2016). Substantial evidence is that which is sufficient to persuade a fair-minded person of the truth of the premise. *In re Marriage of Condie*, 15 Wn. App. 2d 449, 459, 475 P.3d 993 (2020). We do not reweigh the evidence, but instead review the record in a light most favorable to the prevailing party to determine if substantial evidence supports the trial court's findings of fact. *Harrison Mem'l Hosp.. v. Gagnon*, 110 Wn. App. 475, 485, 40 P.3d 1221 (2002). We then review the approved findings for whether they support the trial court's conclusions of law. *Tiller v. Lackey*, 6 Wn. App. 2d 470, 484, 431 P.3d 524, (2018).

Assignments of error to findings of fact that are not argued in a brief are abandoned on appeal. *In re Marriage of Glass*, 67 Wn. App. 378, 381 n.1, 835 P.2d 1054 (1992). And, unchallenged findings of fact are verities on appeal. *Harris v. Urell*, 133 Wn. App. 130, 136, 135 P.3d 530 (2006).

Iversen disputes the trial court findings 19, 20, 22, 23, 25, 27, and 28. But she fails to contest findings 20, 23, 25, 28 and the portion of finding 27 which states that Iversen "failed to prove her claims for trespass, ejectment or adverse possession." CP at 180. Therefore, those uncontested findings are verities on appeal. *Harris*, 133 Wn. App. at 136.

## I. ADVERSE POSSESSION

Iversen argues that the trial court erred in concluding that the Baudrands adversely possessed the disputed area because the evidence does not support a finding of open and notorious or hostile use. We disagree.

"Adverse possession is a mixed question of law and fact." *Maier v. Giske*, 154 Wn. App. 6, 18, 223 P.3d 1265 (2010). "The trier of fact determines whether the essential facts exist, and the court determines whether those facts constitute adverse possession." *Giske*, 154 Wn. App. at 18. On appeal, we "review[] the adverse possession determination de novo, but defer[] to the factual findings made below." *Giske*, 154 Wn. App. at 18.

To establish a claim of adverse possession, a party must show possession of the claimed property was (1) open and notorious, (2) actual and continuous, (3) exclusive, and (4) hostile. *Giske*, 154 Wn. App. at 18 (citing *Chaplin v. Sanders*, 100 Wn.2d 853, 857, 676 P.2d 431 (1984)). All elements of adverse possession must have occurred for at least 10 years. RCW 4.16.020. And, the party asserting adverse possession has the burden of proving its elements by a preponderance of the evidence. *Harris*, 133 Wn. App. at 137. A preponderance of the evidence means that a fact finder must be persuaded that the facts are "more likely than not." *Anderson v. Akzo Nobel Coatings, Inc.*, 172 Wn.2d 593, 608, 260 P.3d 857 (2011).

Although Iversen assigns error to finding 22, which finds that every element of adverse possession is met, Iversen fails to argue why the findings of actual, continuous, and exclusive use are unsupported by evidence. Because she fails to explain how the evidence fails to support that portion of the finding, that assignment of error is partially abandoned on appeal. *In re Marriage*

9

*of Glass*, 67 Wn. App. at 381 n.1. Therefore, we address only the remaining elements of open, notorious, and hostile use.

A.      *Open and Notorious Use*

Iversen argues that the Baudrands did not possess the area openly and notoriously. We disagree.

The adverse possession claimant proves the open and notorious requirement if they can show either that "(1) the true owner had actual notice of the adverse use throughout the statutory period, or (2) the claimant used the land so that any reasonable person would assume that the claimant is the owner." *Harris*, 133 Wn. App. at 141. "In other words, the claimant must show that the true owner knew, or should have known, that the [] occupancy constituted an ownership claim." *Harris*, 133 Wn. App. at 141. The relevant inquiry is the claimant's treatment of the land, not his subjective belief that he owned the land. *Giske*, 154 Wn. App. at 19. Successful claims of adverse possession occur where "the parties furnished some evidence of usage," which "includeed acts such as clearing land, mowing grass, and maintaining shrubs and plants." *Anderson v. Hudak*, 80 Wn. App. 398, 404, 907 P.2d 305 (1995) (emphasis omitted). But ultimately, possession "depends upon the nature, character, and locality of the property involved and the uses to which it is ordinarily adapted or applied." *Anderson*, 80 Wn. App. at 403.

The parties do not dispute that Rooms had actual notice of the Baudrand adverse use of the disputed area because the Baudrands submitted a variance request representing that they owned the disputed area, they testified that they mowed the disputed area before Rooms started using a wheelchair, and they installed a birdbath and welcome tile in the disputed area as soon as they moved in. The record supports a finding that Rooms had notice.

Moreover, the evidence supports the trial court's finding that the Baudrands adversely possessed the disputed area because the Baudrands used the land in a manner that any reasonable person would assume that the Baudrands were the owners. For example, James Baudrand testified that he mowed the lawn up to the Rooms' gravel driveway. Muyskens testified that he observed the Baudrands mowing the disputed area for at least 20 years. Muyskens also testified that he mowed the disputed area in belief that his grandfather owned that property. The Baudrands placed a garden birdbath and welcome tile with other plants on the disputed area. James Baudrand also used that area to get to the back yard, and he removed apple trees and blackberry bushes to make better use of the disputed area. The Baudrands' landscaper, Wendy Walker, testified that she had been trimming, mowing, and caring for the disputed area since 2010. She also testified that she always mowed up to the gravel driveway.

Substantial evidence supports the trial court's finding that the Baudrands used the land such that a reasonable person would assume that the Baudrands owned the disputed area. Moreover, a court can find open and notorious use if the true owner had notice of the adverse use. Here, it is undisputed that Rooms had such notice; therefore, that fact alone can support open and notorious use.

Iversen argues that "No Washington court has held that the singular act of mowing alone creates open and notorious use." Br. of Appellant at 14. The argument fails for two reasons.

First, the Baudrands did more than a singular act of mowing the lawn. The Baudrands installed a garden birdbath and a welcome tile with other plants in the disputed area. James Baudrand used that area to get back in the yard. He also removed the blackberry bushes and apple trees from that disputed area to make better use of it. Those are all acts done in addition to

mowing the lawn for 20 years. Therefore, Iversen's argument does not accurately characterize the Baudrands' use of the disputed area and is unsupported by the facts on the record.

Second, Iversen misrepresents the case law. What constitutes possession is a fact-specific inquiry. *Anderson*, 80 Wn. App. at 403. In *Anderson*, we held that possession "depends upon the nature, character, and locality of the property involved and the uses to which it is ordinarily adapted or applied." *Anderson*, 80 Wn. App. at 403. In *Nickell*, we held that by "landscap[ing] and maintain[ing]" a strip of land for 23 years "the [claimants] satisf[ied] the elements of adverse possession" and "acquired title to the disputed strip by adverse possession." *Nickell v. Southview Homeowners Ass'n*, 167 Wn. App. 42, 52, 271 P.3d 973 (2012).

Iversen cites to three cases to support her claim that the act of mowing alone is insufficient to support a claim of adverse possession: (1) *Mesher v. Connolly*, 63 Wn.2d 552, 556, 388 P.2d 144 (1964); (2) *Riley v. Andres*, 107 Wn. App. 391, 394, 27 P.3d 618 (2001); (3) *Lingvall v. Bartmess*, 97 Wn. App. 245, 249, 982 P.2d 690 (1999). We are not convinced that any of these case support Iversen's argument.

In *Mesher*, our Supreme Court found that the defendant and his predecessors' occasional act of cutting grass in the disputed area did not defeat a claim of adverse possession. 63 Wn.2d at 556-57. Thus, *Mesher* seems to support the Baudrands' argument. Our Supreme Court reasoned that

> The cutting of the entire lawn between the two houses could well have been an act of neighborly accommodation and does not evidence any intent to claim any right of ownership in the 30-inch strip with which we are concerned.
>
> On the other hand, the circumstances and manner of the cutting of a lawn may be an 'unfurling of the flag' of hostile ownership.

*Mesher*, 63 Wn.2d at 556.

In *Riley*, we reviewed a trial court's grant of adverse possession on a motion for summary judgment. 107 Wn. App. at 395. We discussed the open and notorious element and held that the plaintiffs did more than plant trees and shrubs: they maintained landscaping on the strip, which was open and notorious use. *Riley*, 107 Wn. App. at 396-97. The *Riley* case merely illustrates that courts consider the nature, character, and locality of the property involved and the uses to which it is ordinarily adapted or applied. *Riley*, 107 Wn. App. at 396-97. Although we considered the fact that the Rileys did more than landscaping, we never *required* facts beyond landscaping to support a claim of ownership. *Riley*, 107 Wn. App. at 393-97.

And, in *Lingvall*, we affirmed the trial court's finding that the claimants adversely possessed the disputed area. 97 Wn. App. at 253. In *Lingvall*, the claimants "planted two flowering plums and pine trees in the [disputed area]. She and her husband cleared away brush and wild shrubbery. They landscaped, mowed, and maintained the area continuously and exclusively." *Lingvall*, 97 Wn. App. at 254. We held that the facts were sufficient to support adverse possession. *Lingvall*, 97 Wn. App. at 254. And, we expressly rejected the defendants' argument that a claimant must "do everything a true owner could have done with the land." *Lingvall*, 97 Wn. App. at 254 (internal quotation marks omitted). Instead, we confirmed that "[t]he nature of possession is determined objectively by the manner in which the claimant treats the land." *Lingvall*, 97 Wn. App. at 254. In essence, we rejected a requirement of specific conduct, and instead, affirmed the principle that the inquiry is fact specific and dependent on the objective use of the disputed land. *Lingvall*, 97 Wn. App. at 254.

None of the three cases cited by Iversen support her position. Iversen merely points to cases where claimants showed more than landscaping and mowing to support claims of true

ownership. This does not mean that a claimant cannot adversely possess land through landscaping or mowing alone. And, to the extent that claimants are required to do more than mowing, the Baudrands showed more than just mowing.

Here, the Baudrands and their predecessors regularly mowed the six foot and six inches of the disputed strip of land and maintained landscaping there. They also maintained the lilac bushes, installed a garden birdbath and welcome tile, and planted plants in the disputed area. The trial court did not err in concluding that the Baudrands used and possessed the disputed area openly and notoriously.

B.      *Hostile Use*

Iversen argues that the trial court erred in concluding that the Baudrands met the hostility element because the Baudrands mowed the disputed area with implicit permission from Rooms as a neighborly accommodation. We disagree.

"Hostility requires 'that the claimant treat the land as his own as against the world throughout the statutory period.'" *Nickell*, 167 Wn. App. at 50 (quoting *Chaplin*, 100 Wn.2d at 860-61). Permission, express or implied, from the true owner negates the hostility element because permissive use is inconsistent with making use of property as would a true owner. *Teel v. Stading*, 155 Wn. App. 390, 394, 228 P.3d 1293 (2010). This qualification means that "a different set of rules applies when the initial use is permissive." *Miller v. Anderson*, 91 Wn. App. 822, 828, 964 P.2d 365 (1998) (quoting *Granston v. Callahan*, 52 Wn. App. 288, 293, 759 P.2d 462 (1988)). "Whether use is adverse or permissive is a question of fact." *Miller*, 91 Wn. App. at 828 (quoting *Miller v. Jarman*, 2 Wn. App. 994, 997, 471 P.2d 704 (1970)).

The trial court's finding that the Baudrands' use was hostile is supported by substantial evidence. Iversen's arguments to the contrary ask us to reweigh the evidence and rely on the fact that Rooms used a wheelchair toward the end of his life. The evidence does not support Iverson's argument.

Testimony from both the Baudrands and Muyskens shows that the Baudrands used the disputed area as their own before Rooms ever needed help mowing his yard. For example, Muyskens testified that his grandfather told him to mow up to the Rooms' driveway "because that's what he said he owned up to the garage." 1 VRP (Oct. 20, 2022) at 58. Muyskens had been mowing the disputed strip before Rooms started using a wheelchair. James Baudrand also testified that he mowed right up to the gravel driveway until Rooms was incapacitated, and only then did he start mowing the whole yard. The Baudrands had also represented in a variance request that the setback from the corner of their garage to the shared property line with the neighboring property was six feet and six inches from the corner of the garage, which is essentially the disputed area. Rooms was aware of the variance request and did not object. And, Iversen does not dispute the trial court's finding regarding the variance request nor does she present evidence showing that Rooms granted the Baudrands permission to represent that disputed area as their setback for purposes of the application. Therefore, substantial evidence supports the trial court's finding that the Baudrands use was hostile.

Iversen also argues that the Baudrands cannot show adverse possession because they never used the land for any purpose. The argument fails for two reasons. First, Iversen does not support her argument with authority mandating that a claimant use the disputed area for a specific purpose. Second, our precedent does not require an adverse possession claimant to use

the land in any specific way. In fact, we rejected this same argument in *Lingvall*. 97 Wn. App. at

254 (holding that a claimant need not "'do everything a true owner could have done' with the

land."). Instead, we confirmed that "[t]he nature of possession is determined objectively by the

manner in which the claimant treats the land." *Lingvall*, 97 Wn. App. at 254. Therefore,

Iversen's argument fails.[4]

Sufficient evidence supports all the contested findings of fact. Iversen does not argue

that the findings of fact do not support the conclusions of law. The trial court did not err in

concluding that the Baudrands adversely possessed the disputed strip of land.

## II. EQUITABLE ESTOPPEL

Iversen argues that the trial court erred in concluding that the Baudrands were not

equitably estopped from contesting the boundary line because they relied on the erroneous

Emerson survey, they located a boundary marker, and they failed to object to the string line. We

do not consider this argument.

As an initial matter, Iversen's estoppel argument in the trial court was based entirely on

the 2001 and 2004 short plat lot line adjustments. Now, for the first time on appeal, Iversen

bases her estoppel argument on two different facts: The Baudrands located the corner markers,

and they failed to object to the string line.

Because Iversen failed to argue these facts to support their equitable estoppel argument in

the trial court, the court did not make findings of fact related to these issues, and we do not

consider them on appeal.

---

[4] Iversen argues that other states have held that mowing and trimming lawn in a developed
neighborhood is insufficient to constitute hostile possession. However, because established
Washington law resolves this issue, we need not refer to out-of-state authority cited by Iversen.

Regarding the equitable estoppel argument as presented to the trial court, Iverson does not now argue that the trial court erred when it determined that her claim of estoppel failed because she did not prove reliance on the Emerson survey. "A party abandons an issue by failing to pursue it on appeal." *Holder v. City of Vancouver*, 136 Wn. App. 104, 107, 147 P.3d 641 (2006). We hold that Iversen abandoned this issue, and we do not consider it.

### III. PAROL AGREEMENT DOCTRINE

Iversen argues that the Baudrands agreed to the boundary line as demarcated by Iversen's fence. Because Iversen raises this issue for the first time on appeal, we do not consider it.

Appellate courts generally do not hear arguments raised for the first time on appeal. RAP 2.5(a); *Timberland Bank v. Mesaros*, 1 Wn. App. 2d 602, 606, 406 P.3d 719 (2017). We need not consider on appeal a theory that the trial court "had no effective opportunity to consider and rule upon at trial." *Commercial Credit Corp. v. Wollgast*, 11 Wn. App. 117, 126, 521 P.2d 1191 (1974).

Under the parol agreement doctrine, property owners and their successors are bound by the common agreed upon boundary when

> (1) There must be either a bona fide dispute between two coterminous property owners as to where their common boundary lies upon the ground or else both parties must be uncertain as to the true location of such boundary; (2) the owners must arrive at an express meeting of the minds to permanently resolve the dispute or uncertainty by recognizing a definite and specific line as the true and unconditional location of the boundary; (3) they must in some fashion physically designate that permanent boundary determination on the ground; and (4) they must take possession of their property by such occupancy or improvements as would reasonably give constructive notice of the location of such boundary to their successors in interest; or (as an alternative to (4) above), (4a) bona fide purchasers for value must take with reference to such boundary.

*Piotrowski v. Parks*, 39 Wn. App. 37, 40, 691 P.2d 591 (1984) (quoting *Johnston v. Monahan*, 2 Wn. App. 452, 457, 469 P.2d 930 (1970)).

At trial, Iversen argued the doctrine of mutual recognition and acquiescence, which is a similar but distinct defense from the parol agreement doctrine. *Compare Piotrowski*, 39 Wn. App. at 40 (elements of parol agreement), *with Merriman v. Cokeley*, 168 Wn.2d 627, 630, 230 P.3d 162 (2010) (elements of mutual recognition and acquiescence). Iversen raises the parol agreement doctrine for the first time on appeal. Moreover, the trial court's findings concerned the mutual recognition and acquiescence defense not the parol agreement defense.

## IV. PERMANENTLY ENJOINING IVERSEN

Iversen argues that the trial court erred in permanently enjoining her from the Baudrand property because the decision is unsupported by the record. We agree.

A permanent injunction is proper if the party seeking relief can show by clear, cogent, and convincing evidence "(1) that he or she has a clear legal or equitable right, and (2) that he or she has a well-grounded fear of immediate invasion of that right." *Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 699, 974 P.2d 836 (1999). A party who adversely possesses property "acquire[s] legal title" to the disputed land. *Gorman v. City of Woodinville*, 175 Wn.2d 68, 71, 283 P.3d 1082 (2012). We review a trial court's decision to grant an injunction and the terms of the injunction for abuse of discretion. *Hoover v. Warner*, 189 Wn. App. 509, 528, 358 P.3d 1174 (2015). "Trial courts have broad discretionary power to fashion injunctive relief to fit the particular circumstances of the case before it." *Hoover*, 189 Wn. App. at 528. A trial court abuses its discretion when its decision is "based upon untenable grounds or the decision is manifestly unreasonable or arbitrary." *Hoover*, 189 Wn. App. at 528.

We note two facts here: the Baudrands made no claim for injunctive relief in the complaint, and the trial court's findings were made on a preponderance of the evidence standard. Moreover, there is neither evidence on the record nor any finding of fact to support that the Baudrands have a well-grounded fear of immediate invasion of their right to the disputed property.

The trial court abused its discretion in permanently enjoining Iversen because the decision is manifestly unreasonable based on the facts on the record.

## V. INADEQUATE LEGAL DESCRIPTION

Iversen argues that the trial court erred in including an unrecorded instrument as part of the legal description of the disputed area. We agree.

"[A] contract or deed for the conveyance of land must contain a description of the land sufficiently definite to locate it without recourse to oral testimony, or else it must contain a reference to another instrument which does contain a sufficient description." *Bigelow v. Mood*, 56 Wn.2d 340, 341, 353 P.2d 429 (1960).

The judgment's legal description of the Baudrands' property described the portion acquired by adverse possession as follows: "the South face of that certain garage located upon the Baudrand property as shown on court Exhibit Number 11." CP at 229. However, the trial court failed to attach Exhibit 11 to the judgment and decree. Therefore, the legal description is insufficient. Thus, we remand with instructions for the trial court to amend the legal description or attach Exhibit 11 to the judgment and decree.

## ATTORNEY FEES

The Baudrands seek attorney fees on appeal. We decline the Baudrands' request.

No. 55493-3-II

Under RAP 18.1 and RCW 7.28.083, the prevailing party in an action asserting title to real property by adverse possession may request the court to award costs and reasonable attorney fees. RCW 7.28.083(3). The court may award all or a portion of costs and reasonable attorney fees to the prevailing party if, after considering all the facts, the court determines such an award is equitable and just. RCW 7.28.083(3).

Here, the trial court declined to award either party reasonable attorney fees. And, in considering all the facts and circumstances, we likewise decline to award fees to either party.

We hold that the Baudrands adversely possessed the disputed area and are not estopped from asserting title. However, we hold that the trial court erred in issuing a permanent injunction against Iversen and composing an inadequate the legal description. Thus, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, P.J.

We concur:

Maxa, J.

Lee, J.

20